A93A1276. OXLEY v. THE STATE.
(435 SE2d 705)

BIRDSONG, Presiding Judge.

Cathy Jean Oxley pled guilty to driving under the influence, the trial court allowing her to reserve for appeal its grant of the State's motion in limine. On May 20, 1992, at 2:12 a.m., Oxley was pulled

over for speeding and running two stop signs; she had a strong odor of alcohol on her breath; had red glassy eyes and was unsteady on her feet. She failed field sobriety tests and registered "positive" on an alcosensor. She was taken to the police station where she submitted to an Intoximeter 3000 test which showed a blood-alcohol content of .13 grams percent. A second breath test administered by police showed .12 grams percent.

Some time after her arrest, appellant read a newspaper article about the Intoximeter 3000 test; she became concerned about the effect of acetone on blood-alcohol tests using machines in which the Taguchi cell has been removed. See *Lattarulo v. State*, 261 Ga. 124, 126-127 (401 SE2d 516). Appellant met Chief Denny of the Hapeville Police Department, who read the article. Together they performed certain "experiments," to wit: "Miss Oxley was given the opportunity, she was observed, she had not been drinking, there was no odor of alcohol, she was not unsteady on her feet, her eyes were not glassy and her speech was not slurred. She was given the Intox 3000 with the City of Hapeville Police Department. The [result] was .08. She was immediately transported by a Lieutenant with the . . . City of Hapeville Police Department to South Fulton Hospital [about] five minutes [later where] blood was extracted. The results [of that blood test] were .00. It was totally negative for the presence of any alcohol. . . . [A] further test was conducted where a witness observed her going back . . . with the same bartender where . . . she took two mixed drinks in a period of time that will be testified to, went back, did not drive, of course, but was taken back to the . . . Police Department where, after the consumption of only two standard mixed drinks over a period of time when it should have ended up probably 00, but where it certainly should have been very, very low, she blew into the Intox 3000 and was again point 17 which was totally out of the range of anything that it could have been."

Appellant contended her expert testimony would show that because of the disabling of the Taguchi cell in the Intoximeter 3000 machines in Georgia in 1984, that machine is not capable of picking up substances which read on the same infrared scale as ethanol, and is unreliable when used on appellant. The trial court ruled appellant could give evidence that she was exposed to acetone, and that her expert could give his opinion as to the effect of acetone on the Intoximeter 3000 machines as used by the State of Georgia. However, the evidence of the experiments performed by appellant and police personnel was disallowed, on the basis that evidence of testing on a different machine than the one on which she was tested after her offense is irrelevant, because, as in *Blanos v. State*, 192 Ga. App. 835, 836 (386 SE2d 714), "the original tests condition, including defendant's own physical condition, could not have been duplicated." Appellant

contends the disallowance of this evidence was error under *Lattarulo*, supra at 126, where it was said: "An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction." *Held*:

Appellant contends that unlike the defendant in *Blanos*, supra, she is not trying to duplicate the conditions of her testing after her arrest, but rather she is trying to demonstrate that no accurate result can be obtained for her with any Intoximeter 3000 machine with the disengagement of the Taguchi cell, and that her experiments would support this contention, the weight of that evidence being a jury issue. *Lattarulo*, supra.

The trial court did not err in disallowing the evidence of appellant's and the police chief's experiments. The experiments may suggest an apparent anomaly in the machines used in the experiments, but they are not evidence that no accurate result can be obtained in appellant's circumstances with any Intoximeter 3000 machine presently used in Georgia. Certainly they are not evidence that the machine used after her arrest gave a false result. Expert testimony of this nature might be admitted in a proper case, but the evidence proffered here is not evidence that the Intoximeter 3000 test cannot give accurate results in appellant's alleged circumstances. The proffered evidence, at best, suggests the machines used by appellant *in the experiments*, gave anomalous results.

The right to challenge intoximeter test results stated in *Lattarulo* is the right to introduce evidence of the possibility of error or circumstances "that might have caused the machine [on which the defendant was tested upon arrest] to malfunction." Id. The evidence proffered in this case is irrelevant to that purpose, for like the evidence offered in *Blanos*, it does not duplicate the conditions of the machine used or the conditions of appellant on her arrest.

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED AUGUST 26, 1993 —
RECONSIDERATION DENIED SEPTEMBER 17, 1993 ▮▮▮▮▮▮▮▮

*Sexton & Associates, Lee Sexton*, for appellant.

*Keith C. Martin, Solicitor, Evelyn Proctor, Assistant Solicitor*, for appellee.