## A95A1930. MILLER v. THE STATE.
(464 SE2d 621)

SMITH, Judge.

Harold Miller was charged with 13 offenses stemming from his relationship with a neighbor's 13-year-old son.[1] The trial court directed a verdict as to three counts, and a jury acquitted Miller on three more. Following the denial of his motion for new trial, Miller appeals from the judgment of conviction entered on the remaining seven counts on which the jury found him guilty.

The record reveals that Miller discovered the neighbor child molesting his seven-year-old daughter. He did not contact the authorities, but Miller and his wife brought the boy home to the boy's mother and advised her they thought the boy needed help. The next

---

[1] The charges in the indictment include two counts of aggravated child molestation, two counts of child molestation, three counts of solicitation of sodomy, sexual exploitation of a minor, two counts of exhibiting harmful materials to a minor, contributing to the unruliness of a minor, possession of marijuana, and possession of marijuana with intent to distribute.

day, after the boy attempted suicide, he was admitted to Georgia Mental Health Institute. While there, he was interviewed by the police, and he admitted molesting both Miller's daughter and his 11-year-old son. He eventually also made accusations against Miller, claiming Miller had given him money for committing oral sodomy and other acts and had molested him repeatedly, shown him pornography, and provided him with marijuana and alcohol. Based upon this information, law enforcement authorities sought and obtained a search warrant for Miller's home. Miller was arrested when, upon executing the search warrant, police officers found pornographic books and magazines, sexually explicit photographs, sexually explicit videotapes (including a commercial tape at the end of which was a homemade tape of Miller himself performing autoerotic acts), and a small amount of marijuana and drug paraphernalia.

1. Miller was an attorney licensed in Georgia and practicing in the area of criminal defense at the time of his arrest. During a hearing on pretrial motions, he requested that he be allowed to act as co-counsel, along with his retained attorney. The trial court denied Miller's request, stating that his "understanding of the law is you cannot both be represented by counsel and be pro se" and rejecting counsel's suggestion that Miller's status as a member of the bar was a relevant factor.

The trial court's understanding was incorrect. In fact, Miller's bar membership is crucial. In *Seagraves v. State*, 259 Ga. 36 (376 SE2d 670) (1989), the Supreme Court held that the Georgia Constitution of 1983, Art. I, Sec. I, Par. XII, permits an attorney to represent himself while also being represented by counsel, although a lay person may not do so. Id. at 39. The Supreme Court reasoned that an attorney's familiarity with courtroom procedure and working with other attorneys significantly lessens the risk of disrupting proceedings. Id. at 38.

The trial court recognized it had erred after Miller was convicted, and at the hearing on Miller's motion for new trial, Miller was permitted to act as co-counsel. Despite the court's acknowledgement of its earlier error and the fact that one of the principal bases on which a new trial was sought was the trial court's earlier denial of this right, the motion for new trial was denied. In denying the motion on this ground, the court found that its own earlier error was "completely harmless" and that it had been waived. We cannot agree and therefore are compelled to reverse.

The trial court based its waiver rationale upon Miller's dismissal before trial of the lawyer who represented him at the time the request to act as co-counsel was made and the replacement of that lawyer with new counsel. The court concluded that Miller's failure to renew his request to act as co-counsel after this change in retained counsel

constituted a waiver. Contrary to the trial court's conclusion, we do not find that the change of counsel required Miller to renew a motion on which the court previously had ruled with apparent finality. Miller's request was based or dependent not upon the identity of retained counsel but on his own right to represent himself along with *whomever* he retained to represent him.

Likewise, we do not agree with the trial court that its error was harmless. The Supreme Court in *Seagraves* upheld an attorney/defendant's right to act as co-counsel "subject to the authority of the trial court to limit the exercise of that right in order 'to insure the orderly disposition of matters before it.' [Cit.]" Id. at 39. The trial court may use that authority to prevent disruption of the proceedings but may not use that authority to prevent a non-disruptive attorney/defendant from participating actively and professionally in his defense.

The trial court found that Miller "failed to offer any evidence of anything he could or would have done as co-counsel that [his retained trial counsel] did not do or which would have affected the outcome of this case." This finding is belied by the record. Even if Miller would have been prevented from conducting cross-examination of the victim, for the victim's protection, and even assuming the trial court was correct in believing that allowing Miller to make closing argument would be improper, Miller still presented evidence that had he been allowed to participate, the trial strategy and evidence might have differed in numerous other ways.

As Miller argued at the hearing on his motion for new trial, the accused — the person most familiar with the facts of the case — was also an experienced criminal defense attorney. Miller testified he would have interviewed and subpoenaed other witnesses, including members of the victim's family, to test the credibility of the victim. In fact, he retained a firm of investigators to conduct these interviews, but contrary to his wishes, his counsel did not present these witnesses. He desired to participate in voir dire to establish a rapport with the jury and to "humanize" himself. He believed strongly that experts should be retained and called as witnesses, but no experts were called by his counsel.

Error is harmless only when it is highly probable that it did not contribute to the judgment. *Snelling v. State*, 215 Ga. App. 263, 266 (1) (c) (450 SE2d 299) (1994). We cannot say with certainty that preventing Miller from acting as co-counsel affected the outcome of the trial. We must consider, however, that the jury did not convict Miller of all offenses charged. We must also consider the nature of the evidence in this case, including the victim's failure to accuse Miller until after he was discovered molesting Miller's daughter, the admission into evidence of the explicit materials found in Miller's home,

and the fact that the case depended heavily on the jury's evaluation of the credibility of both Miller and the victim. Given these factors, we also are not persuaded that a high probability exists that these differences in strategy and the denial of Miller's request to participate in the trial as a professional did not affect the outcome. Accordingly, we must reverse.

2. Because this case must be retried, we consider Miller's other enumerations of error concerning issues that may recur.

Miller contends the court erred in denying his motion to suppress the evidence found in the search of his home. Citing cases such as *Davis v. State*, 214 Ga. App. 36 (447 SE2d 68) (1994); *VonLinsowe v. State*, 213 Ga. App. 619 (445 SE2d 371) (1994), and *Langford v. State*, 213 Ga. App. 232 (444 SE2d 153) (1994), he first argues that the affidavit in support of the search warrant was deficient because it was based only on the uncorroborated statement of the victim, whose truthfulness must be questioned, and thus the warrant was not issued upon probable cause. The cases cited by Miller are distinguished on their facts; all involved affidavits based upon tips from anonymous, unnamed, or confidential informants. Here, the information came from a named informant, the alleged victim. This Court has upheld a search warrant for the home of an alleged child molester based upon similar information from the victim, holding that "[b]ecause the non-confidential hearsay informant was the victim of a crime, there was no requirement that her reliability be further corroborated in order to show that probable cause existed." *Peacock v. State*, 170 Ga. App. 309, 310 (1) (316 SE2d 864) (1984). In *Peacock*, we noted that such an affidavit met the even more rigorous *Aguilar-Spinelli* (*Aguilar v. Texas*, 378 U. S. 108 (84 SC 1509, 12 LE2d 723); *Spinelli v. United States*, 393 U. S. 410 (89 SC 584, 21 LE2d 637)) test, now abandoned in favor of the "totality of circumstances" test. Id. See also *Wilcoxen v. State*, 162 Ga. App. 800, 801 (2) (292 SE2d 905) (1982).

Miller also argues that the warrant was overbroad and lacked sufficient particularity in the description of items sought and required officers to make subjective decisions regarding what constituted pornography. The warrant sought "pornographic magazines/pornographic videotapes depicting sexual intercourse, . . . masturbation or lascivious exhibition of the genitals or pubic area of any person. . . ."

A warrant must describe items sought with enough particularity to enable the executing officer to seize those items with reasonable certainty. However, when circumstances make an exact description a virtual impossibility, it is permissible that the warrant describe only the generic class of items sought. *Tyler v. State*, 176 Ga. App. 96, 97 (335 SE2d 691) (1985). In *Tyler*, this Court held that a warrant authorizing a search for "marijuana and 'pornographic material which is in violation of Georgia law' " described the items sought with suffi-

cient particularity. Id. The warrant here was far more particularized. The question of whether the items were pornographic vel non was not in issue here. Their designation as pornographic was merely a descriptive aid to the officers' search. Id.; see *Holden v. State*, 202 Ga. App. 558, 561 (2) (b) (414 SE2d 910) (1992).

Finally, in this regard, Miller's argument that the officers exceeded the scope of the warrant is similarly without merit. He bases this argument upon the seizure of many videotapes without first viewing them; many of these tapes were later determined not to be pornographic. The evil to be guarded against is the execution of an indiscriminate "general search." We will not, however, impose a requirement that the executing officers view tapes in their entirety or read all printed materials prior to seizing them; such a requirement would be unreasonably burdensome, both on the officers and on the target of the search, whose premises are invaded. We believe the proper inquiry is simply whether from the titles, appearance, or location of the items, the officers reasonably believed the warrant authorized their seizure. Such was the case here, and we find no error. The trial court properly denied Miller's motion to suppress evidence.

3. In Miller's final enumeration, he maintains that even if his motion to suppress was properly denied, State's Exhibit 8 should have been excluded because of its extremely prejudicial effect on the jury. State's Exhibit 8 is a commercially produced videotape of a sexually explicit film at the end of which is added a homemade video approximately 15 minutes long, depicting Miller himself performing various autoerotic acts and talking to the camera. The tape was found in the search of Miller's home.

Miller argues that the tape had no relevance to the sexual activity with which he was charged and that the nature of the homemade portion of this tape, in particular, is so "despicable" that it is analogous to post-autopsy or post-tracheotomy photographs, which have been prohibited because they unnecessarily cause prejudicial reaction in jurors. See, e.g., *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983). We disagree.

The rule in *Brown* is restricted to *gratuitous* exhibits that are also gruesome and prejudicial. The *Brown* court held that photographs showing mutilation of a victim resulting from the crime, or post-autopsy photographs that show facts apparent only after autopsy, may be necessary and relevant and are admissible.

The tape in issue here was relevant in several respects. One of the crimes with which Miller was charged was anal sodomy, and the tape is relevant to show his bent of mind toward this particular activity. The tape also corroborates certain portions of the victim's testimony by proving that Miller possessed both commercial sex films and explicit home videotapes portraying Miller. In addition, this Court

has held that such material is relevant to show the accused's lustful disposition. *Helton v. State,* 206 Ga. App. 215, 216-217 (424 SE2d 806) (1992). The trial court did not err in admitting the tape.

*Judgment reversed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 29, 1995.

*Richard E. Hicks, R. Michael Whaley,* for appellant.

*J. Tom Morgan, District Attorney, Robert W. Houman, Desiree S. Peagler, Assistant District Attorneys,* for appellee.