## A97A0779. BROWNLEE v. THE STATE.
### (483 SE2d 370)

ELDRIDGE, Judge.

On September 20, 1995, appellant, Carol Brownlee, was involved in a collision on Akers Mill Road, during which she collided with a vehicle driven by Jon Alion as it exited from the Akers Mill shopping center in Cobb County. Appellant was upset from the collision, had broken her leg, and was in pain.

The Cobb County police came to the accident scene to investigate the collision. While talking to an officer, the officer detected the odor of alcohol on appellant's breath. The officer began to question appellant regarding alcohol consumption, and appellant became upset because she did not believe that the accident was her fault; because she was in pain from her injury; and because of the officer's accusation that she might be driving under the influence of alcohol. Appellant consented to the administration of an alcosensor test, as well as field sobriety tests, which included a horizontal gaze nystagmus test. Based upon the results, the police arrested appellant for DUI. Appellant refused to submit to any tests of blood, urine, or breath that could quantify blood-alcohol level, after she had been properly advised of her rights under the informed consent statute.

The case went to jury trial on June 10, 1996, and appellant was found guilty on June 11, 1996.

The state based its prosecution on OCGA § 40-6-391 (a) (1), DUI — less safe driver. Since appellant had refused to take a blood, breath, or urine test to quantify the amount of alcohol in appellant's blood, the state's evidence depended upon the testimony of witnesses as to appellant's condition prior to and after the collision. In addition, the state's evidence showed that appellant was administered an alcosensor test for the presence of alcohol, as well as field sobriety tests, which appellant failed, indicating intoxication. Officer Wells and Dunkerton testified for the state as to appellant's conduct and appearance, while Lieutenant Garrett testified as to prior similar transactions. The officers stated their opinion that appellant had been under the influence of alcohol to the extent that it was less safe to operate a motor vehicle.

Appellant presented evidence by an eyewitness who saw the collision and who testified that appellant was driving normally and did everything possible to avoid the collision. The witness testified that he did not smell alcohol on appellant's breath and gave his opinion

that appellant was not under the influence of alcohol. The defense put up Ms. Sandra Harmon and Mr. Edwin Hass, who testified that they both had been with appellant at Lassiter's Tavern just prior to the collision, and they saw appellant drink only two and one-half glasses of wine while eating. Ms. Harmon testified that in her opinion appellant did not appear impaired when appellant drove out of the parking lot.

1. The first enumeration of error is that the trial court's charge as to what it means to be under the influence of alcohol pursuant to OCGA § 40-6-391 (a) (1) was harmful error because it was misleading and/or contrary to law.

The trial court gave the jury a charge on driving under the influence of alcohol — less safe driver. The defense reserved objections to the charge.

Appellant contends that the language of the charge violates *Harper v. State*, 91 Ga. App. 456, 458-461 (2) (86 SE2d 7) (1955), which found that the giving of the "to-any-extent-whatsoever" charge as to intoxication was reversible error. In the case sub judice, the charge stated that the jury did not have to find appellant drunk, but had to find "that the operator of a motor vehicle is *under the influence of alcohol* when he or she is so affected by the alcohol as to make that person a *less safe driver* than they would have been had they not consumed any alcohol at all." (Emphasis supplied.) See OCGA § 40-6-391 (a) (1). Appellant contends that the specific language of the charge "than they would have been had they not consumed any alcohol at all," when modifying "less safe," violates *Harper v. State*, supra. She also contends that *Smitherman v. State*, 157 Ga. App. 526 (278 SE2d 107) (1981), lays down a mandatory charge as to language, i.e., "the operator of a motor vehicle is *under the influence of alcohol* when he is so affected by it as to make *it less safe for* him *to drive*, operate, or be in control of the vehicle than it would be if he were not affected by such alcohol." (Emphasis of statutory language supplied.) Id. at 527; OCGA § 40-6-391 (a) (1).

*Harper v. State*, supra, found error in a DUI charge which indicated that a jury could find driving under the influence when alcohol had been consumed "to any extent whatsoever," but without requiring a finding as to the second element, i.e., being "less safe" because of such alcohol consumption. In the case sub judice, the charge given did not violate *Harper v. State*, supra, because the charge required the jury to determine the effect of the alcohol consumption upon the "less safe" driving in order to find that the driver was under the influence of alcohol. While there exist semantic similarities between *Hart v. State*, 26 Ga. App. 64 (105 SE 383) (1920); *Harper v. State*, supra; *Smitherman v. State*, supra, and the case sub judice, the charge in the case sub judice was a correct statement of law. See *Mattarochia v.*

*State*, 200 Ga. App. 681, 684-685 (5) (e) (409 SE2d 546) (1991). Thus, the trial court did not err in giving the request to charge.

2. The appellant's second enumeration of error is that the trial court erred by permitting the state to use cross-examination to force appellant to put her character in issue.

On direct examination, appellant's counsel asked her whether or not at the time of the collision, after being at Lassiter's, she was a safe driver; appellant stated her opinion that she was. Appellant's counsel also questioned her regarding Lassiter's and what she did there, how often she went there, what she ate there, and what she drank there.

On cross-examination, the prosecutor questioned appellant about whether she had ever become drunk at Lassiter's. The prosecutor, after defense objection, changed the question and asked how many drinks she had consumed on the night of the arrest and then asked appellant how many drinks she would have to consume before she believed that she was too impaired to drive. Appellant answered that she did not know, but that she took a cab when she believed it was necessary. The prosecutor then asked whether it was true that in the past she had to be coaxed into taking a cab because she was impaired. Defense counsel objected that it was not relevant and raised character as an issue. The trial judge overruled the objection and allowed the inquiry as one going to habit or course of conduct relating to knowledge of her impairment to drive. Appellant admitted that she previously had called a cab to take her home from Lassiter's. Defense again objected to the follow-up question "[s]o you have been drunk or impaired?" The prosecutor was instructed by the trial court to ask why she had called a cab, which he did, and appellant indicated that she had believed that she was too impaired to drive. The prosecution then asked how many drinks had been required for her to believe that she was so impaired, and appellant indicated four or five drinks. The prosecutor then inquired as to what type of drinks the four or five were, and appellant stated that the drinks were White Russians, which generally contain more alcohol than wine. Appellant, after a discussion regarding the size of drinks, stated that she did not drive after four drinks of any kind. The prosecutor asked appellant if it was true that appellant went to Lassiter's three or four times a week, which appellant denied; defense counsel made a motion for mistrial based upon the placing of appellant's character in evidence, which was denied. The prosecutor, again, went into the size of the drinks and whether four drinks impaired appellant's ability to drive; defense counsel, again, objected on the basis of character, which the court overruled. Appellant described her condition after four drinks as not drunk, but "tipsy." The prosecutor asked appellant how her reflexes were affected when she was tipsy, and appellant

indicated that her reflexes "slowed down." Appellant refused to admit that the alcohol that she had drunk on the night in question affected her reactions and reflexes.

We find that appellant opened the door to the line of cross-examination objected to at trial as placing appellant's character in evidence. On direct examination, appellant's counsel specifically asked appellant about Lassiter's, her past association with Lassiter's, when appellant would go there, how often she went there, and what she drank there. By expressing her opinion on direct examination as to whether she was a safe driver when she left Lassiter's, even under the influence of the two and one-half drinks she had admittedly consumed while there, appellant opened the door to cross-examination as to when appellant believed she was not a safe driver, how much she would have to drink to reach such admitted impairment, what she did under such circumstances, and whether or not she had ever been unable to realize that she was impaired. All such areas of cross-examination were legitimate areas of impeachment and attacked the credibility of appellant's opinion on direct that she was a safe, unimpaired driver after consuming an admitted quantity of alcohol at a tavern she admitted visiting frequently. "(I)t was appellant, on direct examination, who introduced the topic. He cannot now complain that the prosecutor followed up on cross-examination. [Cits.]" (Citations and punctuation omitted.) *Mitchell v. State,* 193 Ga. App. 214, 216 (2) (387 SE2d 425) (1989), quoting *Lockett v. State,* 188 Ga. App. 645, 646 (373 SE2d 768) (1988); see also *Wilkey v. State,* 215 Ga. App. 354 (450 SE2d 846) (1994); *Butts v. State,* 193 Ga. App. 824 (389 SE2d 395) (1989).

Further, where evidence that may touch on character is relevant for a legitimate evidentiary purpose other than as an attack on character, such evidence is admissible although it raises an issue as to character. OCGA § 24-9-20 (b); *Hall v. State,* 264 Ga. 85 (441 SE2d 245) (1994); *Height v. State,* 214 Ga. App. 570 (448 SE2d 726) (1994); *Causey v. State,* 154 Ga. App. 76 (267 SE2d 475) (1980). The trial court did not err either in overruling the objections or in denial of the motion for mistrial.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MARCH 7, 1997 —

*Monzer J. Mansour, Jack J. Menendez,* for appellant.
*Benjamin F. Smith, Jr., Solicitor, Rebecca A. Hulsey, Barry E. Morgan, Assistant Solicitors,* for appellee.