## A97A1010. KNAPP v. THE STATE.
(493 SE2d 583)

BEASLEY, Judge.

Knapp was arrested April 24, 1996, and convicted of driving with an unlawful blood alcohol concentration as prohibited by OCGA § 40-6-391 (a) (4), effective April 21, 1995, thereafter redesignated subsection (a) (5). Evidentiary, procedural, and jury charge issues are raised.

Knapp failed to stop at a road block license check. One of the officers got in his patrol car, followed Knapp, and stopped his car. Upon approach, the officer detected the odor of alcohol emanating from his breath. Knapp was unsteady on his feet, had red and watery eyes and, when asked if he had been consuming alcohol, said he had had whiskey and beer earlier. The officer conducted standard field sobriety tests and the alcosensor breath test. The results prompted the officer to inform Knapp of his implied consent rights (OCGA §§ 40-5-55 and 40-6-392 (a) (3)), arrest him, and take him to the police station. An intoximeter breathalyzer test showed a blood alcohol content of .16 percent in two sequential samples.

1. Knapp enumerates as error the jury charge in the language of OCGA § 40-6-392 (b). It states, among other things, that there shall be a presumption that the person was under the influence of alcohol as prohibited by paragraphs (1), (2) and (3) of subsection (a) of OCGA § 40-6-391 if the blood alcohol concentration exceeds certain amounts. Knapp contends the charge constituted impermissible burden shifting. This issue was settled in *Simon v. State*, 182 Ga. App. 210, 212 (4) (355 SE2d 120) (1987). See also *Holcomb v. State*, 217 Ga. App. 482, 484-485 (3) (458 SE2d 159) (1995); *Ellerbee v. State*, 215 Ga. App. 102, 104-105 (5) (449 SE2d 874) (1994). *Simon* held that where not properly qualified, such a charge is impermissibly burden shifting but, even if improperly given, it is not relevant to the determination of any element of the crime defined in OCGA § 40-6-391 (a) (4) and does not require reversal. The clear language of OCGA § 40-6-392 (b) itself shows that the presumptions do not apply to former subsection 391 (a) (4).

*Gilbert v. State*, 262 Ga. 840, 841 (2) (426 SE2d 155) (1993) is inapposite. In *Gilbert*, the Supreme Court specifically did not address any question of the relationship between subsection 392 (b) and former subsection 391 (a) (4) because the appellant had been acquitted of violating OCGA § 40-6-391 (a) (4).

2. Knapp next contends he was prevented by the court from showing the possibility of error in the Intoxilyzer 5000 test due to machine malfunction.

The State introduced in evidence the last quarterly certificate of inspection of the intoximeter before April 24, 1996, the date of the test on Knapp. It states that this particular instrument "was thoroughly inspected, tested, and standardized on February 12, 1996 and all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order." This met the evidentiary requirement that the chemical test conducted on Knapp be proved valid. OCGA § 40-6-392 (a) (1) and (f). In addition, the trooper who arrested Knapp and conducted the test on his breath described how the machine worked and explained the fail-safe mechanisms which preclude testing if the machine is not in perfect operating condition. Both samples taken in the test of Knapp's breath showed a blood alcohol content of 0.16.

Knapp sought, in cross-examining the trooper, to attack the test by attempting to show the machine was not in good working order and thus not operating properly when he was tested. He may of course do so. As the Supreme Court stated in *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991): "An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction. Such evidence would relate to the weight rather than the admissibility of breathalyzer results." See also *Pratt v. State*, 208 Ga. App. 617, 618 (2) (431 SE2d 397) (1993). Cf. *Osley v. State*, 210 Ga. App. 296, 298 (435 SE2d 705) (1993) (right to introduce evidence limited to evidence of the possibility of error in the machine used to test defendant).

Knapp showed the trooper a document that counsel described as a maintenance sheet of July 19, 1996, from the records of the sheriff's office. It is styled a "service work order." The court ruled it inadmissible as not relevant, on the State's objection. The document indicates the machine was repaired sometime after mid-July but does not shed any light on when the machine first needed repair. Nor does it contain any information which would allow the inference the machine was not functioning properly on April 24, 1996.

Defendant was not permitted to cross-examine the trooper about it but proffered that the officer would have testified that there was no certificate for what would have been the next quarterly inspection on May 12 because the machine was not in good working order on that

date. Defendant also proffered that the July 19 document and the officer's testimony would have shown that various parts of the machine were replaced and that the machine was malfunctioning in June. He did not proffer any evidence tending to show when the machine stopped functioning properly after its February 12 satisfactory inspection or that it was not operating properly on April 24.

In the absence of any other evidence which would link the proffered evidence with the condition of the machine on April 24, when it was used to test Knapp, the proffered evidence would not logically raise a reasonable inference that the machine was not in good working order on that date. Speculation would be needed to make the connection.

The rule is that "Evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded." OCGA § 24-2-1. This rule " 'favors the admission of any relevant evidence, no matter how slight its probative value,' [cits.], and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. [Cits.]" *Baker v. State*, 246 Ga. 317, 319 (3) (271 SE2d 360) (1980). But "the admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985); *Baker*, supra.

Applying these principles, we hold that the court did not abuse its discretion; Knapp was not entitled to admission of the proffered evidence as a matter of law, as it was of remote relevance, if any, to the operating condition of the machine on which he was tested on April 24.

3. Enumerated as error is the court's refusal to give Knapp's written request to charge on good character. Knapp claims that his testimony about his own character entitled him to the charge.

"In State v. Braddy, 254 Ga. 366, 330 S.E.2d 338 (1985), the defendant testified that he was a church member, taught Sunday School, was an associate minister of youth at his church, and had never been charged with or convicted of a crime. This testimony was allowed as evidence of good character instead of testimony regarding his reputation in the community. The Supreme Court held that the defendant was entitled to a charge on good character after he testified regarding specific acts which he believed established his good character, holding that 'conduct reveals character as accurately as reputation does.' [Cits.] . . . [Thus], Braddy, supra, created a second method for introducing good character evidence so as to entitle a defendant to a jury charge on good character; a defendant's testimony regarding his own conduct." *Etienne v. State*, 219 Ga. App. 95,

96 (464 SE2d 396) (1995).

Knapp references no examples of conduct tending to prove his good character, as there were in *Braddy* but not in *Etienne*. "This case presents us with precisely the problem anticipated by Chief Justice Hill in his dissent in *Braddy*. That is, how many instances of good acts as recounted by the defendant will entitle him to a charge on good character? And further, what type of behavior constitutes such good deeds?" Id. at 97. The only evidence Knapp offers is his pure speculation about how he would react under certain hypothetical circumstances, and testimony that could just as easily be interpreted as evidence of bad character, i.e., he felt comfortable driving with his daughters in the car after he drank beer, and the acknowledgment that he has had "a couple of speeding tickets in [his] lifetime." Cf. *Brownlee v. State*, 225 Ga. App. 311, 314 (2) (483 SE2d 370) (1997) (character in issue where defendant testified about her past experience and drinking patterns at tavern); *Campbell v. State*, 221 Ga. App. 105 (470 SE2d 503) (1996) (character in issue where defendant testified about community involvement, including helping disadvantaged and elderly). Knapp was not entitled to the requested charge.

4. Failure to conduct a *Jackson-Denno* hearing regarding the voluntariness of certain statements Knapp made during the traffic stop is the next enumeration and is without merit. Such a hearing is only required where the statements sought to be introduced were made by a defendant in custody. *Gilstrap v. State*, 159 Ga. App. 11 (282 SE2d 644) (1981). A person is "in custody" if a reasonable person in the detainee's position would have thought the detention would not be temporary. *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984).

In *Trudewind v. State*, 224 Ga. App. 223 (480 SE2d 211) (1996), an officer initiated a traffic stop after he observed a vehicle weaving, crossing over into the oncoming lane of traffic, and driving onto the shoulder of the roadway. The officer requested the driver's license and proof of insurance. As he produced the items, the officer detected a strong odor of alcohol on the driver's breath and noticed that his eyes were bloodshot. The results of the subsequent field sobriety tests were admissible because the driver was not in custody as defined in *Berkemer* at the time of the tests.

Similarly, in *Lipscomb v. State*, 188 Ga. App. 322 (372 SE2d 853) (1988), after an officer stopped a driver and asked him to produce his driver's license and proof of insurance, the officer detected the odor of alcohol on the driver's breath. When asked if he had been drinking, the driver indicated he had. The driver was not placed under arrest until after the driver performed routine field sobriety tests and took an alcosensor test which showed positive results. The statement that

the driver had been drinking was admissible despite the lack of a pre-statement *Miranda* warning and the absence of a *Jackson-Denno* hearing on voluntariness.

There is no more evidence that Knapp was in custody than in *Trudewind* and *Lipscomb*.

5. Lastly, Knapp contends the court failed to require the State to lay a proper foundation before introducing evidence of the alcosensor results.

The admissibility of such evidence is not governed by OCGA § 40-6-392 when the alcosensor is not used as evidence of the amount of alcohol in a person's blood, *Turrentine v. State*, 176 Ga. App. 145, 146 (335 SE2d 630) (1985), so the State need not lay the foundation required for test results on devices subject to OCGA § 40-6-392. *Gray v. State*, 222 Ga. App. 626 (1) (476 SE2d 12) (1996). Cf. *Channell v. State*, 172 Ga. App. 156 (322 SE2d 356) (1984) (alcosensor results inadmissible without proper foundation where results used to indicate blood alcohol level).

Nevertheless, where the testimony offered by the State is that the alcosensor showed evidence of alcohol on the defendant's breath, the cases are consistent in that, at a minimum, the officer administering the test must testify that he used "a device of a design approved by the Director of the Division of Forensic Sciences" of the Georgia Bureau of Investigation. Rule 92-3-.06 (3), Rules of the Georgia Bureau of Investigation; *Aman v. State*, 223 Ga. App. 309, 310 (1) (477 SE2d 431) (1996); *Ronskowsky v. State*, 190 Ga. App. 147, 148 (2) (378 SE2d 185) (1989); *Gray*, supra at 630; *Turrentine*, supra at 146.

Despite objection by defense counsel both before and during trial, the court erroneously allowed testimony of the alcosensor results without first requiring the foundation described in *Gray*. The officer testified "I gave him the alco-sensor test, which was positive." Given the totality of the evidence, it is highly probable that this did not affect the jury's verdict. It thus does not constitute reversible error. *Johnson v. State*, supra, 238 Ga. at 61; *Simms v. State*, 223 Ga. App. 330, 333 (477 SE2d 628) (1996); *Abdsharafat v. State*, 195 Ga. App. 837 (395 SE2d 61) (1990).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 5, 1997.

*McDonald & Cody Law Offices, Douglas W. McDonald, Jr.*, for appellant.

*Malcolm S. Campbell*, for appellee.