A98A0738. DAVIDSON v. THE STATE.
(499 SE2d 697)

ELDRIDGE, Judge.

The defendant, Gerald Alton Davidson, appeals his May 1997 conviction on two counts of child molestation, four counts of aggravated sodomy, two counts of aggravated child molestation, three counts of aggravated sexual battery, two counts of cruelty to children, and one count of statutory rape. We affirm.

"On appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this [C]ourt determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence shows that, from 1991 until 1996, the defendant was involved in a relationship with the victims' mother. The relationship was often violent. The victims, two girls who were approximately five and seven years old in 1992, testified that the defendant repeatedly molested them separately and while they were together. Specifically, they testified that the defendant touched their genital

areas with his hands and with a vibrator; forced them to perform oral sex on him; performed oral sex on them; raped them; and masturbated in their presence. Both victims testified that the defendant forced them to watch violent, pornographic movies in his bedroom. One victim testified that the defendant told her that "it'll make [sex] better so I could . . . see how those women were doing it on TV so I would understand how to do it." Both victims testified that, before and after the sex acts, the defendant gave them cigarettes, alcoholic beverages, and candy. He also threatened to harm them and their mother if they told anyone.

Eventually, one of the victims reported the abuse to a school counselor, who contacted the victim's mother. However, the mother questioned the defendant, who denied the acts, and the mother concluded that the victim was lying or that any contact by the defendant was accidental. No charges were brought against the defendant. The victim testified that, because her mother did not believe her, she never told her about the continuing abuse again.

However, in September 1996, one of the victims reported the abuse and was questioned both by a caseworker from the Georgia Department of Family & Children Services ("DFCS") and an investigator with the Banks County Sheriff's Department. The defendant was arrested and a search warrant was executed. During the search, investigators found sexually explicit magazines and videotapes, vibrators, other sexual toys, and a "masturbation machine" which was designed and built by the defendant. They also found several pairs of children's underwear, which were heavily stained and tested positive for seminal fluid without the presence of sperm.

The defendant was tried in May 1997 and convicted on all counts. He appeals.

1. In his first enumeration of error, the defendant asserts that the trial court erred in refusing to sever the trials. We disagree. The defendant was charged with, inter alia, molesting two sisters in the same manner and place. Although some acts occurred while the defendant was alone with one child, other acts were conducted on the children simultaneously.

"Offenses may be joined with are based on the same conduct, on a series of connected acts, or on a series of acts constituting parts of a single scheme or plan. If offenses are joined for any of these three reasons, the defendant does not have an automatic right of severance; instead, the trial judge may grant severance if it is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. There was more than sufficient evidence showing that the crimes charged in the indictments were a series of acts connected together. Consequently, the trial court did not abuse its discretion in denying [the defendant's] motion to sever." (Citations and punctuation omitted.) *Evans v. State*, 188 Ga. App. 379, 380 (373 SE2d 70)

(1988); see also *Carroll v. State*, 199 Ga. App. 8 (403 SE2d 875) (1991); *Stinson v. State*, 197 Ga. App. 687, 688 (399 SE2d 278) (1990) (finding no abuse of discretion in denial of a motion to sever where the similarity of the crimes reaches the level of a pattern).

2. In his second enumeration, the defendant claims that the trial court was required to quash the indictment, asserting that it (a) was unconstitutionally vague, and (b) failed to provide adequate notice of the exact dates of the offenses.

(a) The defendant asserts that the statute upon which the indictment was partially based, OCGA § 16-6-4, defines child molestation in a "vague and indefinite manner" and is therefore unconstitutional under both the United States and Georgia Constitutions. The defendant asserts that the statute "(1) fails to provide persons of ordinary intelligence with notice that it purports to prohibit certain conduct, and (2) lacks definite and explicit standards to guide its enforcement[.]"

However, in *McCord v. State*, 248 Ga. 765, 766 (285 SE2d 724) (1982), the Supreme Court of Georgia upheld the constitutionality of the statute. The Supreme Court determined that "[t]he phrase 'any immoral or indecent act' in conjunction with the requisite element of the offense that the act be committed 'with the intent to arouse or satisfy the sexual desires of either the child or the person' is sufficiently definite. 'We find the statute to be definite and certain in its meaning. Men of common intelligence would not differ as to the application of its provisions.' *Anderson v. Little &c. Funeral Home*, 242 Ga. 751, 753 (251 SE2d 250) (1978)." *McCord*, supra at 766. "Where a law has been held to be constitutional as against the same attack being made, the case requires merely an application of unquestioned and unambiguous constitutional provisions and jurisdiction of the appeal is in the Court of Appeals. [Cit.]" *Zepp v. Mayor &c. of Athens*, 255 Ga. 449, 451 (339 SE2d 576) (1986).

Further, in "determining the sufficiency of the notice, the challenged 'statute must of necessity be examined in the light of the conduct with which a defendant is charged. (Cit.)' *United States v. Nat. Dairy Products Corp.*, 372 U. S. 29, 33 (II) (83 SC 594, 9 LE2d 561) (1963)." *Hall v. State*, 268 Ga. 89, 96 (485 SE2d 755) (1997) (Carley, J., dissenting). In this case, the defendant was indicted for various acts that clearly were prohibited by the statute as being immoral or indecent. These acts included, inter alia, touching the children's genital areas with his fingers and a vibrator in an effort to arouse or satisfy his own sexual desires. In addition, under separate counts, the defendant was indicted for engaging in oral sodomy and sexual intercourse with the children. As such, there is no merit in the defendant's assertion that he lacked statutory notice that these acts were prohibited.

(b) The defendant also claims that the indictment was defective because it failed to specify that the exact dates of the illegal acts were unknown to the Grand Jury. However, "[w]here the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations," as long as the defendant is not surprised or prejudiced by presentation of evidence that the offenses occurred at a time "substantially different from that alleged in the indictment." (Citations and punctuation omitted.) *Hutton v. State*, 192 Ga. App. 239, 241 (384 SE2d 446) (1989). The defendant's assertion that the five-year period encompassed "too many offenses over a too long [of a] time span and against two different victims" does not establish such prejudice or surprise. There was no error in the trial court's refusal to quash the indictment.

3. In his third enumeration, the defendant asserts that the trial court erred when it admitted into evidence videotapes depicting various types of sexual activity, including one videotape which depicted sexual torture and murder.[1] We disagree.

"Admission of evidence is a matter which rests largely within the sound discretion of the trial judge, and if the evidence has a tendency to establish a fact in issue, that is sufficient to make it relevant and admissible. The Georgia rule favors admissibility of any relevant evidence no matter how slight its probative value." (Citations omitted.) *Tyler v. State*, 176 Ga. App. 96, 99 (335 SE2d 691) (1985); see also *Holman v. State*, 202 Ga. App. 57, 58 (413 SE2d 234) (1991). It is well established that sexually explicit videotapes and other paraphernalia are "admissible to show the lustful disposition and bent of mind of the defendant. [Cits.]" *Tyler*, supra at 100; see also *McBee v. State*, 228 Ga. App. 16, 26 (491 SE2d 97) (1997); *Miller v. State*, 219 Ga. App. 213, 217 (464 SE2d 621) (1995); *King v. State*, 209 Ga. App. 529, 530 (433 SE2d 722) (1993); *Burris v. State*, 204 Ga. App. 806, 808 (420 SE2d 582) (1992); *Stamey v. State*, 194 Ga. App. 305, 307 (390 SE2d 409) (1990); *Fortenberry v. State*, 193 Ga. App. 329 (387 SE2d 607) (1989).

Further, this evidence is particularly admissible "*when it has been exhibited to the victim by defendant* as a means of orientating, training, enticing, or lulling the child into performing sexual acts." (Emphasis in original.) *Fortenberry*, supra at 329. The tapes are also admissible if they corroborate the victim's testimony that the defendant possessed commercial, sexually oriented films. *Miller*, supra at 217. However, sexual tapes and paraphernalia belonging to the

---

[1] It is undisputed that the tapes in evidence were legally obtained during a search of the defendant's home. Pursuant to information obtained from the victims, police officers searched under the defendant's waterbed and found the tapes hidden behind the drawers.

defendant are admissible to show lustful disposition even when the victims do not recognize them specifically as having been used on them or in their presence. *Phagan v. State*, 268 Ga. 272, 282 (486 SE2d 876) (1997).

Such relevant evidence is admissible, even if it is "gruesome," unless it is unnecessarily duplicative or gratuitous. *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983); see also *Ramey v. State*, 250 Ga. 455, 456 (298 SE2d 503) (1983). If there is any question about admissibility, "it is a well established rule of law that the rules of evidence require that the evidence be admitted and its weight and effect left to the jury." (Citations and punctuation omitted.) *Burris*, supra at 808; *McBee*, supra at 26; *Helton v. State*, 206 Ga. App. 215, 217 (424 SE2d 806) (1992); *Stamey*, supra at 308.

In this case, the victims testified that the defendant showed them sexually explicit videotapes, including tapes which were "violent." One victim testified that the defendant told her to watch a tape "so I would understand how to do it." Although one victim testified that the tapes did not show "torture," two other witnesses testified that the victims told them that at least one tape contained a murder scene.

In considering the admissibility of the evidence, the trial court withheld ruling on the defendant's motion to exclude the tapes until after the witnesses had testified. The trial court subsequently ruled that the videotape containing the murder scene was "similar . . . if not identical" to the tape described by one of the victims, and that the other tapes showed the defendant's bent of mind and lustful disposition. The court then carefully limited the amount of videotape to be shown to the jury; approximately three minutes of tape were presented. Under these circumstances, we find no abuse of discretion in the trial court's decision to admit the videotapes.

4. The defendant also claims that Officer Allen's testimony that the first videotape contained "a murder scene that was described by [one of the victims]" was inadmissible opinion evidence. We disagree.

The officer's testimony restated general information gained from the victims; the officer did not testify specifically as to the statements made by the victims during the investigation regarding the type of murder scene they had observed on the tape. The officer testified that, based on the victims' statements, videotapes were seized from the defendant's home. After such seizure, the officer verified the contents of the seized tapes and apparently concluded that the tapes may have been viewed by the victims. However, the officer's testimony was not a conclusion as to whether the victims *actually saw* the tape, but was in response to the prosecutor's request that he identify specific pieces of the State's evidence.

Further, in addition to the officer's testimony, the jury heard

conflicting testimony regarding the tapes from the victims, the DFCS caseworker, and a defense witness. Based on such testimony, the jury was able to determine for themselves whether or not the victims viewed this specific videotape. The officer's testimony did not invade the jury's province as to this issue. Cf. *Allison v. State*, 256 Ga. 851, 853 (353 SE2d 805) (1987). Compare *Williams v. State*, 254 Ga. 508, 510 (330 SE2d 353) (1985) (holding that the detective's conclusion that the defendant had altered the crime scene was inadmissible).

5. The defendant asserts that the trial court should have excluded testimony regarding his prior nolo contendere plea to five counts of practicing law without a license. Upon examination of the transcript, this Court noted several instances where such evidence was introduced, directly or indirectly.

(a) The defendant notified the State that he intended to introduce evidence of his good character. See OCGA § 24-9-84. Upon direct examination during the defendant's case-in-chief, a witness was questioned as to the reputation of the defendant in the community prior to his being charged with child molestation. The witness stated that the reputation was good and that he would believe the defendant under oath. On cross-examination, the State asked the witness if he knew that the defendant "was holding himself out to be a lawyer back several years ago?" The defendant objected, but then conceded that the question was appropriate to test the extent and foundation of the witness' knowledge of the defendant. The State then asked the witness whether he knew that the defendant had been "taking money from folks to practice law" and had "pled guilty to practicing law without a license?" The witness denied such knowledge.

"When the defendant, in the trial of a criminal case, puts his character in issue[,] the State may cross-examine the witnesses offered by him in order to test their knowledge of his character[, i.e.,] the extent and foundation of the witness' knowledge." (Citations and punctuation omitted.) *Cunningham v. State*, 182 Ga. App. 591 (356 SE2d 542) (1987); *Ailstock v. State*, 159 Ga. App. 482, 485 (283 SE2d 698) (1981). Accordingly, there was no error in admitting this testimony.

(b) During cross-examination of the defendant's former girl friend (and the victims' mother), the State questioned the witness about an episode in which the defendant had threatened her with harm. In responding to the State's inquiry as to why she dropped the charges the next day, the witness testified that "he always threatened that I was going to hurt his ability to practice law. . . ." The State asked if this occurred when the defendant told her that he was a lawyer, and the witness responded, "No. He told me he was a lawyer when I first met him in '91." The defendant did not object to this testimony. The witness also testified that the defendant had

shown her business cards which identified him as an attorney at law. The defendant objected only to the form of the State's follow-up question, asserting that the card must first be admitted into evidence. As such, any objection to the admission of this testimony was waived. See *Letlow v. State*, 222 Ga. App. 339, 343-344 (474 SE2d 211) (1996).

(c) The defendant took the stand in his own defense and testified on direct that he had worked in a law office for approximately one year and that he had contacted the State Bar of Georgia about becoming a mediator. During cross-examination, the defendant admitted that he had printed up the business cards identifying him as an attorney at law, even though he was never licensed to practice law. The State then asked "Yet you held yourself out as being an attorney?" In response, the defendant said "Yes. *But I have made amends, and the Court and the system has [sic] forgiven me.*" (Emphasis supplied.) When the State questioned whether the defendant had pled guilty to practicing law without a license, defense counsel asserted his "continuing objection."[2] The defendant then testified that he had, instead, pled nolo contendere to five counts of practicing law without a license. When the State asked about his sentence, defense counsel objected to such questioning unless the State could introduce a certified copy of the conviction; the objection was overruled. Upon further questioning by the State without objection, the defendant explained in detail the circumstances behind his plea.

"Where the defendant testifies and admits prior criminal conduct, he has not placed his character 'in issue' within the meaning of OCGA § 24-9-20 (b). Rather, he has raised an issue which may be *fully explored* by the State on cross-examination. *McDaniel v. State*, 248 Ga. 494 (283 SE2d 862) (1981)." (Emphasis supplied.) *Jones v. State*, 257 Ga. 753, 759 (363 SE2d 529) (1988); see also OCGA § 24-9-64; *Wilkey v. State*, 215 Ga. App. 354, 355 (450 SE2d 846) (1994); *Mitchell v. State*, 193 Ga. App. 214, 217 (387 SE2d 425) (1989). In this case, the defendant volunteered that "the Court and the system [have] forgiven me," clearly implying that he had been involved in some conduct with legal implications. The trial court properly allowed the State to follow up on this testimony, even though the incident did not result in a conviction.

Further, even if the evidence of the defendant's nolo contendere plea and the surrounding circumstances thereof should have been excluded, any error was harmless since the evidence was cumulative of prior testimony and, in light of the overwhelming evidence of the defendant's guilt, "it is highly probable that it did not contribute to

---

[2] During trial, defense counsel repeatedly asserted a "continuing objection" to the admission of evidence of specific bad acts by the defendant.

the jury's verdict against [the defendant]. [Cit.]" *Smith v. State*, 222 Ga. App. 366, 370 (474 SE2d 272) (1996); see also *Hayes v. State*, 263 Ga. 15, 16 (426 SE2d 557) (1993); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Parker v. State*, 226 Ga. App. 462, 464 (486 SE2d 687) (1997). "For a conviction to be reversed, [the defendant] must show both error and harm. Such impeachment, [if] improper, did not rise to the level of reversible error." *McBee*, supra at 21.

6. The defendant also asserts that it was error to admit other acts of misconduct, including evidence that the defendant threatened the victims' mother with a weapon, causing her to call 911; that he pinned her down and repeatedly slapped her; and that he assaulted her by shoving his hand down her throat and telling her to "pretend it's a big dick." Such evidence was elicited during the cross-examination of the victims' mother, a defense witness. A rebuttal witness was also called to corroborate the mother's testimony regarding her call for assistance in 1994.

The defendant is charged with raping and sodomizing the witness' children and threatening to harm them and the witness if the children reported the crimes. Therefore, we find that the evidence was relevant to the issues to be decided in this case. See *Brownlee v. State*, 225 Ga. App. 311, 314 (483 SE2d 370) (1997). Compare *Smith v. State*, 91 Ga. App. 360, 361 (85 SE2d 623) (1955) (evidence was irrelevant to any jury issue to be decided). Further, the defendant had previously placed his character in issue by presenting witnesses to testify as to his good character. See Division 5, supra. Accordingly, there was no error in the admission of this evidence on cross-examination.

7. In his next enumeration of error, the defendant asserts that he should have been granted a mistrial based on an improper communication between jurors outside the jury room. The defendant presented a witness, his son-in-law, who claimed to have overheard a conversation between two jurors in the men's rest room. Such conversation allegedly involved the defendant's testimony.

After questioning the son-in-law outside the presence of the jury, the trial court voir dired the jury panel concerning this alleged incident. None of the jurors indicated that they had discussed the case. Later, following the verdict, the trial court specifically questioned, under oath, both jurors who were allegedly involved. Although one juror admitted that he was asked about the defendant's testimony, the other juror denied that he was involved in any discussion about the case prior to deliberations. Both jurors also denied that anything that occurred outside the courtroom had affected their deliberations or verdict. The trial court then determined that, even if a conversation took place, it did not affect the jurors in their deliberations.

There was no error. See *Holcomb v. State*, 268 Ga. 100, 103 (485 SE2d 192) (1997).

8. The defendant also alleges that the prosecutor improperly argued that a guilty verdict was appropriate because only the jurors could "give [the victim] back one speck of dignity and humanity because he has stripped her of everything." This argument was in the context of reviewing the testimony of one of the victims that, following years of sexual abuse by the defendant, she had twice attempted to kill herself and was now living in a detention facility.

A prosecutor "may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard." (Citations and punctuation omitted.) *Shelton v. State*, 146 Ga. App. 763, 765 (247 SE2d 580) (1978); see also *Johnson v. State*, 246 Ga. 126, 129 (269 SE2d 18) (1980). The trial court did not abuse its discretion in allowing the State's argument.

9. In his final enumeration, the defendant claims that the trial court erred in denying his motion for a directed verdict as to statutory rape of the older victim, asserting that the victim's testimony was not corroborated. We disagree.

The victim, who was 14 years of age at the time of the trial, testified that the defendant started having sexual intercourse with her when she was 11. She also testified that the defendant told her she could not get pregnant because he had had a vasectomy. Two other witnesses testified that the victim told them about the intercourse and the defendant's claim regarding his vasectomy. The defendant admitted to having had a vasectomy and, also, was examined by a medical doctor and found to have had a vasectomy.

"The quantum of corroboration needed in a rape case is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration, but ultimately the question of corroboration is one for the jury. Considering all the evidence presented at trial, we are satisfied that the evidence was sufficient to corroborate the victim's testimony." (Citations and punctuation omitted.) *Davis v. State*, 204 Ga. App. 657 (420 SE2d 349) (1992). This enumeration is without merit.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 11, 1998 —
RECONSIDERATION DENIED MARCH 25, 1998 ▮

*Troy R. Millikan*, for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.