**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 21, 2012**

# In the Court of Appeals of Georgia

A12A0861. McCABE v. THE STATE.

PHIPPS, Presiding Judge.

Based on remarks defense counsel made during closing argument in Marissa McCabe's trial for driving under the influence of alcohol, the trial court granted the state's motion for a mistrial. McCabe filed a plea in bar on double jeopardy grounds seeking dismissal of the accusation. McCabe appeals from the denial of her plea in bar. We affirm.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *Brown v. Ohio*, [cit.]. See 1983 Ga. Const., Art. I, Sec. I, Par. XVIII ("No person shall be put in jeopardy of life or liberty more than

once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").[1]

As a rule, if the trial court declares a mistrial over the defendant's objection or without [her] consent, the defendant may be retried, but only if there was a "manifest necessity" for the mistrial. Manifest necessity can exist for reasons deemed compelling by the trial court, especially where the ends of substantial justice cannot be attained without discontinuing the trial. Manifest necessity exists when the accused's right to have the trial completed by a particular tribunal is subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. The trial court's judgment that there was a manifest necessity to grant a mistrial is entitled to great deference.[2] "The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion."[3]

The record reveals that on November 26, 2005, a state trooper initiated a traffic stop of McCabe's vehicle and, based upon his observations and McCabe's

---

[1] *Williams v. State*, 288 Ga. 7, 8 (2) (700 SE2d 564) (2010).

[2] *Bruce v. State*, 302 Ga. App. 810 (692 SE2d 13) (2010) (punctuation and footnotes omitted).

[3] *Wilson v. State*, 229 Ga. App. 455 (494 SE2d 267) (1997) (citation and punctuation omitted).

performance on field sobriety tests, placed McCabe under arrest for driving under the influence of alcohol. The state trooper transported McCabe to a pre-trial detention center, where he administered a test of McCabe's breath on an Intoxilyzer 5000 machine. McCabe was subsequently charged by accusation with DUI-less safe and DUI per se.

At the trial, the state called as a witness the state trooper who had conducted the traffic stop and administered the breath test. Through the state trooper's testimony, the state introduced a copy of the certificate of inspection for the machine used to test McCabe's breath on November 26, 2005 (State's Exhibit No. 4). The certificate indicated that the machine was thoroughly inspected and tested on November 15, 2005, and that "all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order." When asked what he remembered about the machine the night of McCabe's test, the state trooper testified that the machine appeared to be working properly; he added that anytime the machine is turned on, it runs a self-diagnostic check and, if the machine is running properly, it notifies the tester to proceed with the breath test. He later clarified that the machine was working properly "for [him] and this defendant" on

November 26, 2005, and that when he performed the diagnostic check, "it checked out okay and it allowed" him to test McCabe's breath.

After the state rested, McCabe called as a witness a records manager at the pre-trial detention center. Through the records manager's testimony, defense counsel introduced (as Defendant's Exhibit No.1), a copy of a certificate of inspection identical to the one introduced by the state (State's Exhibit No. 4); the defendant's exhibit, however, also included attachments of other subjects' test results. The exhibit was admitted.

In addition, the records manager presented a certificate of inspection for the same Intoxilyzer 5000 machine, dated February 27, 2007 (Defendant's Exhibit No. 2), the relevance of which the state questioned; two Georgia Bureau of Investigation (GBI) log sheets for the same machine (Defendant's Exhibit Nos. 3 and 4); and an invoice dated January 11, 2007 (Defendant's Exhibit No. 5). The court admitted Defendant's Exhibit Nos. 2 through 4 (subject to later possible redaction).

Reading aloud from Defendant's Exhibit No. 3 (a GBI log sheet for the machine), the records manager testified that on January 24, 2006, a notation was made thereon stating "intox taken out of service will not pass diagnostic test . . . bad motor, to be sent to factory." The witness testified that the exhibit also had a date of

4

December 9, 2005, and the notation "VOID." Reviewing Defendant's Exhibit No. 2, the witness testified that an entry on February 27, 2007 stated "intox returned from factory, quarterly checks completed, all okay, put back into service." The records manager could not find and did not produce inspection certificates for the first through fourth quarters of 2006.

After both sides rested, outside of the presence of the jury, the state moved for a mistrial, asserting that Defendant's Exhibit Nos. 2 through 5 should not have been admitted because those documents were not relevant to the operating condition of the machine on November 26, 2005, when McCabe was tested, and that the jury's perspective had been tainted with evidence suggesting that there were problems with the machine when she was tested.[4] At this point the court denied the state's motion for a mistrial; it ruled that the defendant's exhibits relating to the certificates of inspection were admissible, but that Defendant's Exhibit Nos. 3 and 4, the log sheets involving tests subsequent to McCabe's test, were not admissible.

---

[4] See *Knapp v. State*, 229 Ga. App. 175, 176-177 (2) (493 SE2d 583) (1997) (a defendant may show the possibility of error in the Intoxilyzer 5000 test due to machine malfunction by showing that the machine was not in good working order and thus not operating properly when he was tested; however, trial court did not abuse its discretion in not permitting defendant to introduce evidence that the machine was repaired months after he was tested, as the proffered evidence was of remote relevance, if any, to the operating condition of the machine on the date of his test).

When the jurors returned, the court instructed them as follows: McCabe's test was administered November 26, 2005; the records manager had identified two documents - Defendant's Exhibit Nos. 3 and 4, which were log sheets; the log sheets showed dates starting in December, after McCabe's test; those documents, those logs, and any testimony about subsequent performance of the machine was irrelevant and was to be disregarded.

Thereafter, counsel proceeded with closing arguments. Defense counsel argued: "On November 26 2005, . . . [McCabe] trusted that machine. . . . She did not know everything that she knows now that the machine had a serious history of problems." The state objected, and the court excused the jurors.

Outside the presence of the jury, defense counsel explained that although she had not been allowed to "bring in" the log sheets, she believed she was permitted to discuss the fact that there were gaps in the inspection certificates. Arguing that the machine's subsequent history was inadmissible, the state renewed its motion for mistrial. The court instructed defense counsel that she was permitted to argue that the machine was taken out for repair after the date of McCabe's test, but not permitted to argue about subsequent test results. The jury returned.

In continuing her closing argument, defense counsel told the jury, "there's a lot of reasons . . . why you should distrust that test." She asserted that after McCabe was tested, the machine was taken out of service for over a year beginning the first quarter of 2006, and that

> I thought it was important that the jury understands that this machine had problems. . . . Now the prosecution would like for you to say just look at this one. Just look at November 15th. That's good enough. You need to know nothing else. They fought. They don't want you to hear this. They don't want you to know, but I want you to know and its your right to know. This means nothing on its own. But the argument is, hey, it worked great on November 26th.

The state objected, and the trial judge again excused the jury.

> Outside the presence of the jury, the trial judge explained,

> The reason we send the jury out when we have these discussions is because it's not any business of the jury to know that one side fought for or against something. And the fact that you just argued that they fought to keep things out, I might as well have just kept the jury in here when we had all these discussions. . . .

The state renewed its motion for mistrial, and defense counsel offered an explanation as to why she believed her argument was not improper.

The trial judge admonished defense counsel for commenting to the jury that the state had fought to keep evidence out, stating that such a comment was "too prejudicial for us to go forward." The judge announced,

> At this point, I'm just thinking I'm going to have to grant a mistrial. I hate to do this. . . . Frankly, I've tried to sort of cure some of the issues here. . . but it was not for them to know that the state, quote [unquote], "fought to keep something out." There was a reason I gave it and I sent them out during that discussion[,] . . . but it is insinuating that they're hiding something. And it makes it seem like the documents that I have now excluded that there [was] something hidden in those. And I don't know that that's something that can be cured because I ruled those inadmissible and irrelevant. And I know it's a fine line between the machine being in and out of service and I know there's case law that says . . . you can get into the fact that it's been out of service . . . and I let you talk about that. But because these other documents were originally discussed yesterday and now I have ruled them inadmissible, it makes it seem like the state is hiding . . . something that's relevant to the test result of November 26th.

The trial court thereafter granted the state's motion for mistrial.

In its order denying McCabe's plea in bar, the trial court discussed in great detail: the factual and legal bases for the state's motion for mistrial based on defense counsel's closing argument; the court's rulings that certain exhibits were not

8

admissible and were not to be referenced; the court's curative instructions to the jury after defense counsel made such references; defense counsel's having held up during closing what appeared (to both the judge and the prosecutor) to be the excluded documents; and defense counsel's comments to the jury suggesting that the state had attempted to conceal from the jury relevant evidence. The court found that defense counsel's comments were "immensely prejudicial" and that there was no curative instruction the court could envision that would have rectified the harm, that the ends of substantial justice necessitated a mistrial, and that a manifest necessity existed for declaring a mistrial.

Further, the court stated, "Having dismissed the jury three times immediately before and during closing argument, to discuss the admissibility of this precise matter, the Court can't help but wonder if this was a desperate measure by defendant and her Counsel to obtain a new trial."

Notably, the trial court "is especially empowered to avoid the absurdity of a defendant benefitting from the prejudicial error [she] created."[5] Giving the trial court's judgment the deference to which it is entitled, after reviewing the court's rulings as a whole, we hold that the court's findings support its conclusion that there

_____

[5] See *Bruce*, supra at 811 (punctuation, footnote and emphasis omitted).

was a manifest necessity for declaring the mistrial. The trial court did not err in denying McCabe's plea in bar.[6]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[6] Id.