## A97A1285. GIDEY v. THE STATE.
(491 SE2d 406)

RUFFIN, Judge.

Jacob Gidey appeals from his conviction for driving under the influence of alcohol, driving with unlawful alcohol concentration, and failure to maintain lane. For reasons which follow, we affirm.

The record shows that DeKalb County police officer Steven Davis saw Gidey's vehicle weaving on the interstate one morning at approximately 4:00 a.m. Officer Davis followed Gidey, noticed a continuing pattern of weaving, and eventually conducted a traffic stop. During the stop, Davis noticed that Gidey's eyes were "red and watery" and detected a strong odor of alcohol on Gidey's breath. At Davis' request, Gidey exited the vehicle. Noting that Gidey appeared unsteady on his feet, Davis asked him to complete several field sobriety tests. According to Davis, Gidey was unable to accurately recite the alphabet, exhibited clues evidencing alcohol impairment in the horizontal gaze nystagmus test, and could not successfully perform the walk and turn test. Davis further testified that in his opinion, Gidey was under the influence of alcohol to the extent he was a less

safe driver.

Davis arrested Gidey and transported him to the DeKalb County Police Station. At the station, intoximeter operator Gregory Waters tested Gidey's breath twice on an Intoxilyzer 5000 machine. The first test showed Gidey's alcohol level at .140, and the second test resulted in a .147 alcohol level.

The jury found Gidey guilty of driving under the influence of alcohol, driving with unlawful alcohol concentration, and failure to maintain lane. Immediately after the trial, Gidey was sentenced to 12 months of confinement, with 30 days in custody and the remainder on probation, 40 hours of community service, a single fine of $1,000 on the two alcohol counts, and a $1,000 fine for failure to maintain lane. The trial court subsequently denied Gidey's motions for new trial and for reduction of sentence.

1. Gidey first argues that the trial court erred in admitting the results of the Intoxilyzer 5000 test because the State failed to meet the admissibility requirements of OCGA § 40-6-392 (a) (1) (A). We disagree.

Under OCGA § 40-6-392 (a) (1) (A), a breath test is valid if, among other things, it is "performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. . . ." Section 40-6-392 (f) further provides that a properly prepared and executed inspection certificate for the breath-testing machine is admissible to satisfy this requirement.

Gidey claims that the State failed to present an adequate inspection certificate pursuant to OCGA § 40-6-392 (f) or otherwise establish that the electronic and operating components of the Intoxilyzer 5000 used in this case were in good working order. The record shows that the trial court excluded the inspection certificates offered by the State. The State's other evidence, however, was sufficient to meet the requirements of OCGA § 40-6-392 (a) (1) (A).

Gregory Waters, the individual who conducted the breath tests, testified that he was trained and certified to operate the Intoxilyzer 5000 when he tested Gidey. Waters' permit to operate the machine was introduced into evidence. According to Waters, the methods used to perform Gidey's tests were approved by the Division of Forensic Sciences and the GBI. He conducted the tests using an Intoxilyzer 5000 machine that he had used before and has used since Gidey's tests. Waters further testified that the machine functioned properly when he tested Gidey and did not appear to have any pieces or components missing. The machine also appeared to be in good working order, and the diagnostic tests the machine conducted on itself before

the breath analysis revealed no problems. Waters admitted that he does not know what is under the machine's "hood," but testified that "there [was nothing] irregular about the machine that night[.]"

We find that the State sufficiently proved by competent circumstantial evidence that the breath tests were performed on a machine operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. *Bazemore v. State*, 225 Ga. App. 741, 743-745 (2) (484 SE2d 673) (1997). As we have previously found, "substantial statutory compliance [with OCGA § 40-6-392 (a) (1) (A)] can be established by circumstantial evidence arising from the testimony of [the trained and certified individual] who operated the machine and performed the test." Id. at 744. The trial court did not err in admitting the breath test results based upon Waters' testimony. Id.

2. Citing again to OCGA § 40-6-392 (a) (1) (A), Gidey similarly claims that he was entitled to a directed verdict on the alcohol concentration charge because the State failed to show that the breath tests were performed on a machine operated with all its electronic and operating components properly attached and in good working order. As found in Division 1, however, the State presented competent circumstantial evidence sufficient to make the showing required by OCGA § 40-6-392 (a) (1) (A). Gidey was not entitled to a directed verdict on this ground.

3. Finally, Gidey argues that the sentence imposed by the trial court is disproportionate and unduly harsh. The trial court sentenced Gidey to thirty days in custody, eleven months on probation, forty hours of community service, a single fine of $1,000 on the two alcohol counts, and a $1,000 fine for failure to maintain lane. We find no error.

The record shows that this was Gidey's first offense for driving under the influence of alcohol. The statutory guidelines for sentencing a first offender under OCGA § 40-6-391 provide generally for (1) a fine of not less than $300 or more than $1,000; (2) a period of imprisonment of not less than ten days or more than twelve months, which may be suspended, stayed or probated; and (3) not less than forty hours of community service. OCGA § 40-6-391 (c) (1). The maximum punishment for failure to maintain lane is a fine up to $1,000 or confinement not to exceed 12 months, or both. OCGA §§ 17-10-3 (a); 40-6-1.

Gidey's sentence falls within the range of statutorily prescribed punishment for his offenses. He argues on appeal, however, that his sentence is unduly harsh in comparison with the sentence normally

imposed upon first offenders who elect to plead nolo contendere[1] and that the trial court improperly punished him for exercising his right to trial by jury. This claim has no merit. We have recognized that a trial court does not engage in unconstitutional "vindictiveness" by imposing a harsher sentence following a jury trial than may have been imposed if the defendant had accepted a plea bargain. *Allen v. State*, 193 Ga. App. 670, 671-672 (388 SE2d 889) (1989). Rather, the trial court is "merely 'following through' on the inevitable and permissible 'threat' which is implicit in any plea bargain situation — that rejection of the plea bargain may diminish or destroy the very rationale for the imposition of a lenient sentence." Id. at 671.

Gidey's sentence is not " 'grossly out of proportion to the severity of the crime.' [Cit.]" *Haygood v. State*, 225 Ga. App. 81, 83 (2) (483 SE2d 302) (1997). Accordingly, we find no error in the trial court's sentence.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 8, 1997 —
RECONSIDERATION DENIED AUGUST 26, 1997 — 

*Sidney L. Moore, Jr.*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, W. Cliff Howard, Joseph N. Walden III, Assistant Solicitors*, for appellee.

---

[1] The sentencing guidelines established in OCGA § 40-6-391 (c) (1) govern penalties imposed on all DUI first offenders, including those who plead nolo contendere. OCGA § 40-6-391.1.