### A98A0880. BANKS v. THE STATE.
(509 SE2d 63)

SMITH, Judge.

Howard Banks was charged by accusation with DUI to the extent that it was less safe for him to drive, driving with an unlawful alcohol concentration, and speeding. The trial court directed a verdict on the less safe driver charge, and Banks was convicted of the remaining charges. Judgment was entered thereon, and Banks argues on appeal that he should not have been convicted on the charge of driving with an unlawful alcohol concentration. We find no error and affirm.

On August 18, 1996, Banks was stopped for speeding on Interstate 20 by Georgia State Patrol Trooper Chris Kirksey. Upon speaking with him, Kirksey noticed an odor of alcohol about Banks and learned from Banks that he had two beers. Banks cooperated with Kirksey's request that he perform field sobriety tests. After adminis-

tering the tests, which included a horizontal gaze nystagmus test and an alco-sensor test, Kirksey concluded that Banks was impaired and placed him under arrest. He read Banks his implied consent rights, transported him to the DeKalb County Jail, and administered a breath test using an Intoxilyzer 5000. Kirksey performed two tests using the machine, and when asked the results of the tests, he replied, "The first result was .121. The second was .116."

1. Banks contends the trial court erroneously admitted the Intoxilyzer test results because the State failed to show that the machine operated with all its electronic and operating components in good working order, as required by OCGA § 40-6-392 (a) (1) (A). To satisfy the requirement of showing that the machine was working properly, the State tendered two certificates of inspection permitted by OCGA § 40-6-392 (f). Banks contends that the certificates were improperly admitted because the State failed to lay a proper foundation for their admission.

Assuming without deciding that the certificates were erroneously admitted, the State nevertheless laid a proper foundation for the admission of the breath test results. This Court has held that a certificate of inspection is not the sole method of meeting the foundational requirements of OCGA § 40-6-392 (a) (1) (A). See, e.g., *Caldwell v. State*, 230 Ga. App. 46 (495 SE2d 308) (1997). Kirksey, who conducted the breath tests, testified that he was certified to operate the Intoxilyzer 5000 when he tested Banks. He also acknowledged that despite an apparent malfunction by the machine's printer, causing some of the words to be scrambled, the machine appeared to be working properly when he performed the tests.[1]

Although perhaps "marginal," *Evans v. State*, 230 Ga. App. 728, 730 (497 SE2d 248) (1998) (physical precedent only), this testimony satisfied the State's burden of proving "that the breath tests were performed on a machine operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. As we have previously found, substantial statutory compliance with OCGA § 40-6-392 (a) (1) (A) can be established by circumstantial evidence arising from the testimony of the trained and certified individual who operated the machine and performed the test." (Citations and punctuation omitted.) *Gidey v. State*, 228 Ga. App. 250, 252 (1) (491 SE2d 406) (1997). The printer's malfunction did not affect the admissibility of the test results but went to the weight of these results. See *Knapp v. State*, 229 Ga. App. 175, 176 (2) (493 SE2d 583) (1997). The trial court did not err in admitting the

---

[1] We note that although the words were scrambled apparently due to the printer malfunction, Kirksey testified that he could read the results of the tests.

breath test results.

2. Banks also contends Kirksey's testimony that the results of the state administered tests were .121 and .116 constituted insufficient evidence to sustain a conviction under OCGA § 40-6-391 (a) (5). Stating that the term "alcohol concentration" is narrowly defined as "grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath" by OCGA § 40-1-1 (1), Banks argues that the State presented no evidence "to explain what '.121' and '.116' meant; there was no testimony that the result was in grams of alcohol per 210 liters of breath; there was likewise no testimony that the result was in grams of alcohol per 100 milliliters of blood."

We do not agree that the evidence was insufficient to convict Banks. On appeal, a defendant no longer enjoys the presumption of innocence, and we must view the evidence in the light most favorable to support the jury's verdict. *Williams v. State*, 228 Ga. App. 698, 699 (1) (492 SE2d 708) (1997). In *Harris v. State*, 199 Ga. App. 457, 459 (5) (405 SE2d 501) (1991), the officer who performed the breath test testified that intoximeter "'registered .18 grams percent'" without defining the meaning of ".18 grams percent." We held that this evidence in combination with other evidence introduced at trial was sufficient to support the jury verdict. Id. Similarly, stipulated evidence that the defendant registered .20 on the Intoxilyzer 5000 was admitted into evidence in *Rowell v. State*, 229 Ga. App. 397 (494 SE2d 5) (1997). That opinion does not disclose that evidence was admitted explaining the meaning of ".20," but we found the evidence sufficient to convict defendant.

In this case, Kirksey testified to the results of the Intoxilyzer evaluation and that the machine tested specifically for alcohol. The jury was charged concerning the statutory definitions of alcohol concentration and requirements for conviction. As in *Harris* and *Rowell*, construing the evidence in favor of the jury's verdict, we conclude that the evidence was sufficient to authorize a rational trier of fact to convict Banks of driving with an unlawful alcohol concentration under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

ON MOTION FOR RECONSIDERATION.

Banks has filed a motion for reconsideration arguing that reversal is required under *State v. Kampplain*, 223 Ga. App. 16 (477 SE2d 143) (1996) and *State v. Hunter*, 221 Ga. App. 837 (473 SE2d 192) (1996). He claims that "the only direct evidence of whether the breath testing machine was operating with all its components in good

working order was the operator's admission that 'it was clear to him that at least one electronic or operating component of this machine was not in good working order.'" We do not agree with Banks that reversal is required.

Indeed, as stated in *Kampplain* and *Hunter*, the State is required to show that the machine on which blood tests were conducted was operated with all its electronic and operating parts properly attached and in good working order. *Kampplain* at 17; *Hunter* at 838. In both those cases, the evidence was undisputed that the "Taguchi cells" on the machines had been disabled or overridden or were not attached. *Kampplain* at 16; *Hunter* at 838. The evidence was thus undisputed that the machines were not in good working order, nor were all their parts properly attached.

But here, evidence was presented that the machine worked properly. On direct examination, Kirksey identified the printout of Banks's test results taken from the machine and acknowledged there was something "funny" about the printout. He stated, "Apparently there is a printer malfunction and some of the words are scrambled." But Kirksey *also* acknowledged that despite the malfunction that apparently caused the words to be "scrambled," he could read the printout. He also responded negatively to the question of whether anything was "missing on that printout that you would normally see." When asked whether he believed from his experience that the test results were accurate, he answered, "Yes. I feel like the machine was operating properly at the time."

It is true, as argued by Banks, that on cross-examination, Kirksey responded affirmatively to the following question by defense counsel: "But after you saw the printout, it was clear to you that at least one electronic or operating component of this machine was not in good working order, would you agree?" But when read in the context of the remainder of Kirksey's testimony that the machine was working properly and that he could read the test results, this acknowledgment did not automatically defeat the admissibility of the test results. Rather, the acknowledgment affected only the weight of these results. As stated in *Knapp v. State*, 229 Ga. App. 175, 176 (493 SE2d 583) (1997), Banks was entitled "to attack the test by attempting to show the machine was not in good working order and thus not operating properly when he was tested. . . . An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction. Such evidence would relate to the weight rather than the admissibility of breathalyzer results." (Citations and punctuation omitted.) Unlike *Hunter* and *Kampplain*, some evidence that the machine was working properly was presented by the State. Banks took full advantage of his opportunity to cross-examine Kirksey on that issue. It was for the jury to

decide the weight to be given Kirksey's testimony concerning the printer malfunction.

DECIDED AUGUST 7, 1998 —
RECONSIDERATION DENIED DECEMBER 9, 1998

*Chestney Law Firm, Robert W. Chestney, Tracy M. Delgado*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, Elaine W. Brooks, Stephanie Duncan-Brent, W. Cliff Howard, Assistant Solicitors*, for appellee.