## A98A1842. RADCLIFFE v. THE STATE.
(507 SE2d 759)

BLACKBURN, Judge.

Anthony Scott Radcliffe was involved in an automobile accident on November 12, 1996. After the collision, the elderly driver of the other vehicle went into cardiac arrest and later died. Although Radcliffe did not show signs of being under the influence of alcohol or drugs, the investigating officer read Radcliffe his implied consent rights pursuant to OCGA § 40-5-67.1 (b), and Radcliffe agreed to submit to chemical tests of his blood and urine. See OCGA § 40-5-55

---

(requiring tests to be performed whenever anyone is involved in a traffic accident resulting in serious injuries or fatalities). These tests showed the presence of marijuana in Radcliffe's blood. Radcliffe was convicted of driving with a controlled substance in his blood in violation of OCGA § 40-6-391 (a) (6). He appeals, contending that the trial court erred in denying his motion to exclude the results of his blood test.

1. Radcliffe contends that the implied consent warning failed to properly advise him of the purpose for which he was to be tested. In particular, he notes that the implied consent warning states that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are *under the influence* of alcohol or drugs." (Emphasis supplied.) OCGA § 40-5-67.1 (b) (1). Radcliffe contends that this warning failed to advise him that the test results could also be used to prosecute him for driving with a controlled substance in his blood, which is a separate offense from driving while under the influence of alcohol or drugs. Compare OCGA § 40-6-391 (a) (1), (2) with OCGA § 40-6-391 (a) (6). Therefore, he argues that his consent was invalid and the results of his blood test should have been excluded.

This contention is without merit. As Radcliffe notes, we have held that "[t]he scope of the consent granted by a defendant to a test to determine alcohol or drug content of blood . . . may be derived from the wording of the implied consent warning read to a defendant." *State v. Jewell*, 228 Ga. App. 825, 826 (492 SE2d 706) (1997) (State could not use blood test to support prosecution for possession of cocaine); see also *State v. Burton*, 230 Ga. App. 753 (489 SE2d 121) (1998) (same); *State v. Frazier*, 229 Ga. App. 344 (494 SE2d 36) (1997) (same); *State v. Gerace*, 210 Ga. App. 874, 875-876 (437 SE2d 862) (1993) (State could not use DNA test of blood sample to support prosecution for rape and sodomy).

None of these cases address the fact that OCGA § 40-5-55 (a) expressly sets forth the scope of a driver's consent, stating that "any person who operates a motor vehicle upon the highways or elsewhere throughout this state *shall be deemed to have given consent*, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances *for the purpose of determining the presence of alcohol or any other drug*, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities." (Emphasis supplied.) OCGA § 40-5-67.1 does not purport to define the scope of a driver's consent, but rather requires the arresting officer to read a specified warning to the driver at the time the tests are requested,

and provides that the test results are admissible if the officer follows this procedure. As this Court does not pass upon the constitutionality of statutes, and the Supreme Court has not held OCGA § 40-5-55 unconstitutional, it would appear that OCGA § 40-5-55, and not OCGA § 40-5-67.1, should govern the scope of the driver's implied consent where that consent has not been withdrawn. However, we need not resolve this issue in this case, as the test results are admissible under either analysis.

We have held that "[c]ommon sense and reason dictate that a driver, who is informed that he is being tested 'for the purpose of determining if you are under the influence of alcohol or drugs,' and who is further informed that he will lose his driving privileges if he does not consent to be tested, will reasonably believe, unless informed otherwise, that he is being tested only to determine whether he has committed a driving-related offense." (Citation omitted.) *Burton*, supra at 754. In this case, the blood test was performed to determine whether Radcliffe had committed a driving-related offense — i.e., driving with the presence of marijuana in his blood. Accordingly, the implied consent warning properly advised Radcliffe of the purposes for which his blood was to be tested, and the trial court did not err in denying his motion to exclude the test results.

That this is the proper result is further indicated by examination of the implied consent laws. OCGA § 40-5-67.1 (b) (3) provides that "[i]f [the implied consent] notice is used by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, such person shall be deemed to have been properly advised of his or her rights under this Code section and under Code Section 40-6-392 and the results of any chemical test, or the refusal to submit to a test, shall be admitted into evidence against such person." OCGA § 40-6-392 (a) provides that "evidence of the amount of alcohol or drug in a person's blood" shall be admissible "[u]pon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391." Radcliffe was in fact prosecuted for violating OCGA § 40-6-391 by driving with marijuana in his blood. Accordingly, unlike the cases cited above, Radcliffe's blood sample was used for the legitimate purpose of determining whether he had committed a violation of OCGA § 40-6-391, and not for the purpose of determining whether he had committed any other violations of law.

2. Radcliffe contends the trial court erred in failing to exclude the blood test results because the State failed to perform the tests "according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation," as required by OCGA § 40-6-392 (a) (1) (A). This contention is without merit, as Lisa Callahan, the forensic toxicologist for the DFS who conducted the tests at issue,

testified that the tests were performed according to methods approved by the DFS.

Despite Callahan's testimony, Radcliffe contends that the machines used to perform the blood tests, the Hitachi 911 and the Abbott Axsym, were not in fact properly authorized. He relies on Rule 92-3-.06 (9) of the Rules of the Georgia Bureau of Investigation, which states that "[a]ll blood tests will be performed in accordance with a quantitative Gas Chromatographic technique or any equivalent procedure comparable in accuracy to Gas Chromatography when such is approved by the Director of the Division of Forensic Sciences." He argues that Callahan's testimony established that the Hitachi 911 and Abbott Axsym were not as accurate as gas chromatography, and that the blood test results were therefore inadmissible.

This argument is without merit. First, under OCGA § 40-6-392 (a) (1) (A), the power to approve methods of testing is vested not in the GBI, but in the DFS. Accordingly, it would appear that the DFS' approval of a method of testing would satisfy the statute even if such approval conflicted with a rule issued by the GBI.

Moreover, even assuming that Rule 92-3-.06 (9) is applicable notwithstanding the DFS' approval of the methods used in this case, the trial court correctly found that the rule was satisfied. Although Callahan testified that the Hitachi 911 and Abbott Axsym are not as accurate as gas chromatography in determining the exact amount of a substance in a person's blood, she testified that they do indicate whether or not the substance is present in the blood, which is the relevant issue in this case. Accordingly, the trial court correctly found that the methods used were "comparable in accuracy" to gas chromatography.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 12, 1998 —
RECONSIDERATION DENIED SEPTEMBER 30, 1998 — ▮▮▮▮▮▮

*William Schneider*, for appellant.
*Cheryl F. Custer, District Attorney, Charles C. Flinn, Assistant District Attorney*, for appellee.