S02A0224. YOUNG v. THE STATE.
(565 SE2d 814)

HINES, Justice.

James Billy Young appeals his convictions for driving while under the influence of alcohol and failure to obey a stop sign, contending, inter alia, that the implied consent warning provision of OCGA § 40-5-67.1 is unconstitutional. For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that the arresting officer observed Young drive through a stop sign. Young's breath smelled of alcohol and the officer asked Young to get out of the car. Young staggered as he walked and performed poorly on field sobriety tests. The officer read Young the implied consent warning and requested that he take State-administered breath tests. Young's two tests showed alcohol concentrations of 0.142 and 0.144 grams, over the then-legal limit of 0.10 grams.

Young moved to suppress the results of the tests, and any testimony about them, challenging the constitutionality of OCGA § 40-5-67.1. The trial court denied Young's motions and after a jury trial, Young was convicted of driving under the influence of alcohol ("DUI") and failing to obey a stop sign.

1. Young contends that the implied consent warning contained within OCGA § 40-5-67.1 violates the equal protection clause of the Fourteenth Amendment to the U. S. Constitution and Art. I, Sec. I, Par. II of the Georgia Constitution because the statute discriminates against persons charged with DUI. Young argues that OCGA § 40-5-67.1 provides drivers with less information than that given to similarly situated boaters charged with operating a boat while intoxicated, see OCGA § 52-7-12.5, and to similarly situated hunters charged with hunting while intoxicated. See OCGA § 27-3-7. Under both OCGA §§ 52-7-12.5 and 27-3-7, persons of whom chemical testing is requested are informed that the results of those tests can be used against them at trial; OCGA § 40-5-67.1 does not so inform an automobile driver. This Court has rejected the argument that the implied consent warning of OCGA § 40-5-67.1 is constitutionally infirm because it does not give this information to drivers. See *Lutz v. State*, 274 Ga. 71, 72-73 (1) (548 SE2d 323) (2001); *Klink v. State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000).

When evaluating an equal protection claim, the legislation is presumed to be valid, and the claimant must establish that he is sim-

ilarly situated to members of a class of persons who are treated differently from him, and that there is no rational basis for such different treatment. *Farley v. State*, 272 Ga. 432, 433 (531 SE2d 100) (2000). However, "[c]riminal defendants are 'similarly situated' for purposes of equal protection 'only if they are charged with the same crime or crimes.' *Woodard v. State*, 269 Ga. 317, 321-322 (3) (496 SE2d 896) (1998)." *State v. Jackson*, 271 Ga. 5 (515 SE2d 386) (1999). As a DUI defendant, Young is not similarly situated with those charged under OCGA § 52-7-12.5 or § 27-3-7.

2. The State introduced evidence of the results of the Intoxilyzer 5000 breath test. For such evidence to be admissible, the State must show that the testing machine "was operated with all its electronic and operating components . . . properly attached and in good working order." OCGA § 40-6-392 (a) (1) (A). Here, the State met this burden by introducing certificates of inspection of the Intoxilyzer machine used to obtain the breath tests. See OCGA § 40-6-392 (f); *Pak v. State*, 234 Ga. App. 538, 539 (2) (507 SE2d 166) (1998). The Intoxilyzer operator also testified that the machine was working properly at the time the tests were administered. See *Gidey v. State*, 228 Ga. App. 250, 251-252 (1) (491 SE2d 406) (1997).

Nonetheless, Young contends that the trial court should have granted his motion to exclude any evidence of the test results, contending that the evidence showed the Intoxilyzer 5000 was not operating properly at the time of the tests. He bases this contention on evidence that: at 8:56 p.m., the arresting officer communicated by radio with his dispatcher that he had stopped Young; the video camera mounted on the officer's car showed 8:58 p.m. as the time of the stop; the officer left the scene, with Young, at 9:13 p.m.; the police incident report showed the incident was "cleared" at 9:19 p.m.;[1] and the tests were administered at the police station, approximately three minutes driving time away from the scene, at 9:15 p.m. and 9:18 p.m., according to the internal clock on the Intoxilyzer 5000. Young argues that the recorded times of the tests could not be correct if the other times are correct, and that this compels the conclusion that the machine was not in proper working order at the time of his tests. "An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction. Such evidence would relate to the weight rather than the admissibility of breathalyzer results." *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991). The evidence upon which Young relies does not serve as a basis for the exclusion of the chemical test results.

---

[1] The officer testified that this referred to the time when Young's vehicle identification number was cleared in the computer system.

Young also contends that this evidence, and the doubt it cast on the accuracy of the Intoxilyzer's clock, rendered the evidence insufficient to satisfy OCGA § 40-6-391 (a) (5)'s requirement that his alcohol concentration be equal to or greater than the stated limit "within three hours [of] driving. . . ." On the contrary, the evidence authorized the jury to find Young guilty of violating OCGA § 40-6-391 (a) (5). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 3, 2002.

*Clark & Towne, Wystan B. Getz*, for appellant.

*Gwendolyn R. Keyes, Solicitor-General, Theresa S. Starkes, Assistant Solicitor-General*, for appellee.