## A03A0022. SCARA v. THE STATE.
### (577 SE2d 796)

BLACKBURN, Presiding Judge.

Following a bench trial, Eric Bryant Scara appeals his convictions of driving under the influence of alcohol to the extent that he was a less safe driver (OCGA § 40-6-391 (a) (1)) and driving with an unlawful alcohol concentration (OCGA § 40-6-391 (a) (5)),[1] contending that the results of his breath test should have been excluded because there was no proof it was performed in accordance with approved methods as required by OCGA § 40-6-392 (a) (1) (A). For the reasons set forth below, we affirm.

Scara's motion in limine sought to exclude evidence of results of the Intoxilyzer 5000 breath test on the grounds that the State failed to lay the foundation required by OCGA § 40-6-392 (a) (1) (A), specifically by failing to prove the test itself was conducted in compliance with methods approved by the Division of Forensic Sciences (DFS). Scara argued that because the State did not introduce evidence of the specific methods approved, the State could not meet its burden of proving compliance with them. It is from the denial of that motion that Scara appeals.[2] The admission of evidence rests within the sound discretion of the trial court and will not be disturbed absent its abuse. *Gaston v. State*.[3]

On June 8, 2001, Officer Brandon Wilson arrested Scara for DUI "less safe driver." Wilson read Scara his implied consent warning immediately after arresting him, and shortly after that he administered the Intoxilyzer 5000 breath test, on which Scara registered 0.125. Based on this result, Scara was subsequently charged with DUI under OCGA § 40-6-391 (a) (5).

At the motion hearing, Wilson testified as follows:

[STATE]: Were the methods that you used to perform the Defendant's tests approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation?
[DEFENSE]: Objection, inadequate foundation. There's been no evidence submitted as to what those methods are, Your Honor.

---

[1] Scara was also convicted of failure to maintain lane (OCGA § 40-6-48 (1)), but does not appeal this conviction, and we do not consider it here.

[2] Scara also brought a separate but simultaneous motion to suppress, arguing that all evidence gathered at the traffic stop should be excluded on Fourth Amendment grounds. While both arguments were advanced at the motion hearing, Scara's appellate brief is devoid of any reference to the alleged illegality of the traffic stop. Therefore, to the extent Scara purports to appeal the trial court's ruling on the motion to suppress, this "asserted error is unsupported by argument or citation of authority, [and] it is deemed abandoned." *Merritt v. State*, 254 Ga. App. 788, 792 (564 SE2d 3) (2002). See Court of Appeals Rule 27 (c) (2).

[3] *Gaston v. State*, 227 Ga. App. 666, 668 (490 SE2d 198) (1997).

[COURT]: All right. I'll overrule your objection. Go ahead.
[WILSON]: Yes, sir.

Wilson repeated the above testimony at trial and further testified that he was trained and certified to operate the Intoxilyzer 5000 on the date he administered the test to Scara. Neither the state solicitor-general nor Scara's attorney questioned Wilson in any detail about the methods or how Wilson complied with them. At both the hearing and at trial, Wilson testified that he had used that particular Intoxilyzer 5000 machine both before and after the test at issue and that it appeared to function properly, had no pieces or components missing, and passed its own diagnostic test before he used it on Scara. The printout from Scara's breath test was also entered into evidence at trial, and at the motion hearing the parties stipulated to the admissibility of the machine's certification from the Georgia Bureau of Investigation (GBI).

1. Although the evidence presented by the State is somewhat skeletal, it is sufficient to show compliance with OCGA § 40-6-392 (a) (1) (A) and the methods and rules approved and published by the DFS pursuant to that statute. The trial court did not err in admitting the results of the breath test.

Before the State can introduce the results of a chemical test, including a breath test, to prove a violation of OCGA § 40-6-391 (a) (5), it has the burden of "demonstrating compliance with the statutory, foundational requirements" of OCGA § 40-6-392. *Peek v. State*,[4] citing *Munda v. State*.[5] OCGA § 40-6-392 (a) (1) (A) provides in part:

Chemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose.

Pursuant to that statute, the DFS has published rules in compliance with the Administrative Procedure Act (APA) that set "forth qualification requirements for breath test machine operators, including a requirement that the operators complete a training course in

---

[4] *Peek v. State*, 272 Ga. 169 (527 SE2d 552) (2000).
[5] *Munda v. State*, 172 Ga. App. 857, 858 (324 SE2d 799) (1984).

breath analysis conducted by the DFS. Ga. Comp. Rules & Regs., GBI Rule 92-3-.02 (2)." *Berkow v. State*.[6] These rules are automatically deemed part of the record pursuant to OCGA § 50-13-8, which requires courts to take judicial notice of any regulation promulgated in accordance with the APA without the necessity of an evidentiary proffer.

Our Supreme Court has held that the State may prove compliance with the "approved methods" requirements of OCGA § 40-6-392 (a) (1) (A) solely through the oral testimony of the individual who conducted the test. *Price v. State*[7] (gas chromatography test admissible through oral testimony of analyst who administered it). In *Radcliffe v. State*,[8] we held results of a blood test admissible where the DFS forensic toxicologist testified simply that the tests were performed according to methods approved by the DFS. Likewise, the existence of permits and certificates required by the statute and DFS rules may be proven orally through competent circumstantial evidence. *Gidey v. State*.[9] In *Banks v. State*,[10] we held that testimony by the officer that he was certified to operate the Intoxilyzer 5000 when he tested the defendant and that the machine appeared to be working properly, while "perhaps 'marginal,'" was enough by itself to satisfy the State's burden of proof. Id. at 702 (1). In *Koulianos v. State*,[11] the officer's testimony that he was a licensed intoximeter operator and that he performed the test in accordance with what he had been taught by the DFS, combined with the intoximeter printout showing his name and permit number, was held to be sufficient evidence of his qualifications. Id. at 91.

Here, Officer Wilson testified that he tested Scara using methods "approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation," and that he was "certified" to perform the test. Furthermore, the trial court admitted into evidence the printout of Scara's breath test results, which shows Wilson's name and Intoxilyzer 5000 operator permit number and the results of the machine's self-diagnostic test. This is sufficient evidence of Officer Wilson's qualifications and his compliance with "approved methods." To the extent Scara challenges the foundation laid for the accuracy of the machine itself, Wilson's testimony that the Intoxilyzer 5000 had all its components and was in good working order, the machine's printout, and the stipulation to its GBI certification satisfy that por-

---

[6] *Berkow v. State*, 243 Ga. App. 698, 700 (534 SE2d 433) (2000).
[7] *Price v. State*, 269 Ga. 222, 225 (498 SE2d 262) (1998).
[8] *Radcliffe v. State*, 234 Ga. App. 576, 578-579 (507 SE2d 759) (1998).
[9] *Gidey v. State*, 228 Ga. App. 250, 252 (491 SE2d 406) (1997).
[10] *Banks v. State*, 235 Ga. App. 701 (509 SE2d 63) (1998).
[11] *Koulianos v. State*, 192 Ga. App. 90 (383 SE2d 642) (1989).

tion of OCGA § 40-6-392 (a) (1) (A). Overall, the evidence presented by the State provided at least as much foundational proof as the "marginal" but sufficient evidence offered in *Banks*, supra, and *Koulianos*, supra. The trial court did not err in overruling this ground of Scara's motion in limine and admitting the Intoxilyzer 5000 test results at trial, and Scara's conviction for DUI under OCGA § 40-6-391 (a) (5) must be upheld.

Contrary to Scara's argument, the lack of testimony regarding the DFS' *un*published guidelines and compliance or noncompliance with them does not affect the admissibility of the evidence. "Any deviation from such rule goes to the weight of the evidence, rather than its admissibility." *Jarriel v. State*[12] (discussing unpublished DFS Intoxilyzer 5000 inspection procedures and DFS rule requiring officer to observe suspect for 20 minutes before testing him). "[A]n accused can always introduce evidence of the possibility of circumstances that might cause error in the test results." *Berkow*, supra at 701 (citing *Lattarulo v. State*[13]). In fact, OCGA § 40-6-392 (a) (4) provides for discovery of "full information concerning the test" specifically for the purpose of impeachment and cross-examination. *Bazemore v. State*.[14] See also *Price*, supra at 224. That information was presumably available to Scara, had he chosen to use it.

2. While Scara explicitly states in his reply brief that he also challenges his conviction for DUI "less safe" (OCGA § 40-6-391 (a) (1)), he presents no argument as to why that conviction should be reversed. Because we have determined that the breath test results are admissible and no other evidence has been challenged, we affirm that conviction as well.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JANUARY 15, 2003 —
RECONSIDERATION DENIED FEBRUARY 7, 2003 — ▮▮▮▮▮▮

*Allen M. Trapp, Jr.*, for appellant.
*Stephen J. Tuggle, Solicitor-General*, for appellee.

---

[12] *Jarriel v. State*, 255 Ga. App. 305, 308 (3) (565 SE2d 521) (2002).
[13] *Lattarulo v. State*, 261 Ga. 124, 126 (401 SE2d 516) (1991).
[14] *Bazemore v. State*, 244 Ga. App. 460, 461-462 (1) (535 SE2d 830) (2000).