## A03A2455. THE STATE v. RACKOFF.
### (591 SE2d 379)

ELLINGTON, Judge.

The State Court of Gwinnett County granted Stewart Daniel Rackoff's motion to suppress the results of an Intoxilyzer 5000 breath alcohol test in this prosecution for driving under the influence. The trial court granted the motion because the Intoxilyzer machine was taken out of service five days after the breath test and the State presented no evidence that it had been successfully used "after the test performed on the defendant." Pursuant to OCGA § 5-7-1 (a) (4), the State appeals from the trial court's order. Because the trial court erred in granting the motion, we reverse.

On appeal from an order granting or denying a motion to suppress, the evidence must be construed most favorably to support the trial court's ruling. *State v. Causey*, 246 Ga. App. 829-830 (1) (540 SE2d 696) (2000). "Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation, punctuation and footnote omitted.) Id. at 830 (1).

The record reveals the following relevant, undisputed facts. On June 9, 2001, a Duluth police officer arrested Rackoff for driving under the influence of alcohol. Within 30 minutes of the arrest, Rackoff submitted to a breath alcohol test on an Intoxilyzer 5000. The officer testified that he was trained and had a permit to operate the

---

[12] See id. at 78-79.
[13] See id.

machine and had used the machine in question many times in the past.

The officer testified that on the night of the test, the machine appeared to be in good working order and had all of its components intact. During the course of the testing, the machine ran two self-diagnostic tests which indicated it was functioning properly. The Georgia Bureau of Investigation's Division of Forensic Sciences calibrated the machine on April 2, 2001, and certified it was in good working order. The State introduced this certificate of inspection into evidence and established that the test results did in fact come from that machine. The machine yielded breath alcohol test results of 0.175 and 0.177.

Five days after Rackoff's test, the machine was taken out of service. A record admitted as court's Exhibit 1 indicates that a new certificate was not issued because the machine was to "be repaired or replaced in [the] near future." The document did not indicate why the machine needed repair or replacement. The record did not state whether the machine was damaged, was malfunctioning, was in need of upgrading, refurbishing, or scheduled service, or was simply being replaced by a newer machine. Yet, the court apparently inferred from this document that the machine was "malfunctioning" and, therefore, suppressed the breath test results.

As we have repeatedly held, under OCGA § 40-6-392 (a) (1) (A), a breath alcohol test result is admissible in evidence if,

> among other things, [the test] is "performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. . . ." *Section 40-6-392 (f) further provides that a properly prepared and executed inspection certificate for the breath-testing machine is admissible to satisfy this requirement.*

(Emphasis supplied.) *Gidey v. State*, 228 Ga. App. 250, 251 (1) (491 SE2d 406) (1997). The State, by producing the GBI certificate of inspection, satisfied its foundational burden of establishing the machine was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. Id.; OCGA § 40-6-392 (f);[1] see also *Young v. State*, 275 Ga. 309, 310 (2) (565 SE2d 814) (2002); *Pak v. State*, 234 Ga. App.

---

[1] A properly prepared certificate "shall satisfy the pertinent requirements of paragraph (1) of subsection (a) of this Code section."

538, 539 (2) (507 SE2d 166) (1998); *Tam v. State*, 225 Ga. App. 101, 103 (3) (483 SE2d 142) (1997).

Of course, "[t]his Court has held that a certificate of inspection is not the sole method of meeting the foundational requirements of OCGA § 40-6-392 (a) (1) (A)." (Citation omitted.) *Banks v. State*, 235 Ga. App. 701, 702 (1) (509 SE2d 63) (1998); *Caldwell v. State*, 230 Ga. App. 46 (495 SE2d 308) (1997). "As we have previously found, substantial statutory compliance with OCGA § 40-6-392 (a) (1) (A) can be established by circumstantial evidence arising from the testimony of the trained and certified individual who operated the machine and performed the test." (Citation and punctuation omitted.) *Gidey v. State*, 228 Ga. App. at 252 (1). In this case, the State presented the testimony of a trained and experienced officer that the machine in question appeared to have all its prescribed components and appeared to be working properly. Further, he explained that the machine satisfactorily performed two self-diagnostic tests on the date of Rackoff's breath alcohol test. Finally, the machine produced two test results which were within 0.002 points from each other, which is some evidence the machine was producing consistent test results. This circumstantial evidence is also sufficient to carry the State's burden that the machine was in good working order on the day of the test. E.g., *Banks v. State*, 235 Ga. App. at 702 (1); *Evans v. State*, 230 Ga. App. 728, 730 (497 SE2d 248) (1998) (physical precedent only).

Given the evidence adduced, the State satisfied the foundational requirements for the admissibility of the Intoxilyzer 5000 breath alcohol test results. That the machine may have malfunctioned[2] *after* Rackoff's test does not negate the State's evidence in this case. Rather, that evidence goes only to the weight to which the jury should afford the breath alcohol test results. "An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction. Such evidence would relate to the weight rather than the admissibility of breathalyzer results." (Citation and punctuation omitted.) *Young v. State*, 275 Ga. at 310 (2) (Intoxilyzer's clock was not synchronized); see also *Banks v. State*, 235 Ga. App. at 702 (1) (Intoxilyzer's printer malfunctioned).

The trial court erred in finding that the State "failed to prove that the [Intoxilyzer 5000] was in good working order when the test

---

[2] As the State correctly points out, there is no evidence in the record that the machine was taken out of service because it was giving faulty breath alcohol test results. "Repair," as indicated on court's Exhibit 1, could mean the machine was due for scheduled service, had been damaged by a catastrophic power surge, or had been dropped on the floor and broken – all possibilities that allow for the machine to have been functioning properly until the moment it was rendered inoperable. The court's assumption that the machine was "malfunctioning" was, therefore, entirely speculative. See *Knapp v. State*, 229 Ga. App. 175, 176-177 (2) (493 SE2d 583) (1997).

was performed on [Rackoff]" and in granting his motion to suppress the breath alcohol test results on that basis. Consequently, we must reverse the court's order.

*Judgment reversed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 14, 2003 —
RECONSIDERATION DENIED DECEMBER 2, 2003.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Gary S. Vey, Jennifer L. White, Assistant Solicitors-General*, for appellant.

*Chestney-Hawkins Law Firm, Robert W. Chestney*, for appellee.